### WESTERN UNION TELEGRAPH COMPANY v. F. E. ADAMS.
No. 2778.

1. **Telegraph Messages—Custom.**—It is well known to the public, and can not be unknown to telegraph companies, that the utmost brevity of expression is cultivated in corresponding by telegraph, and that that mode of communication is chiefly resorted to in matters of importance, financially and socially, requiring great dispatch.

2. **Liability of Telegraph Companies—Diligence.**—It would be an unreason-

,able rule, and one not comporting with the uses of the telegraph, to hold that the dispatcher will be released from diligence unless the relations of the parties concerned, as well as the nature of the dispatch, are disclosed.

3. **Duty of Operator Receiving Important Message.**—It seems to be the duty of a telegraph operator receiving an important message for transmission, if he desires information beyond the face of the message, to obtain such information from the sender, and if he does not the telegraph company should be chargeable with the information such inquiry of the sender would have disclosed.

4. **Notice from Face of Dispatch—Case in Judgment.**—A dispatch was sent to plaintiff at Athens, Texas, from Waco, as follows: "Clara, come quick. Rufe is dying." Clara is the wife of plaintiff, and Rufe was her brother. *Held*, that the telegraph company was chargeable with notice of the relationship.

5. **Mental Suffering—Evidence.**—It was not error to admit testimony to the appearance of the wife of the plaintiff as showing mental distress and her declarations showing it. The fact could be inferred from the circumstances.

6. **Who May Sue for Negligence of Telegraph Company.**—If the message was in fact sent for the benefit of plaintiff's wife, and she was damaged by the negligence of the telegraph company, the husband had the right to sue for such damages, regardless of the question by whom or by what authority the message was sent.

7. **Repayment of Cost of Telegraph Message.**—That the sender was repaid the cost of the message by the party to whom it was sent would in no way confer the right to sue for damages, if such right did not exist prior to such payment.

8. **Right to Recover from Telegraph Company the Tolls Paid.**—As prompt delivery is of the essence of the contract for sending a message, a failure to deliver promptly would be such a breach as to authorize a recovery of the money paid upon the contract.

APPEAL from Henderson. Tried below before Hon. F. A. Williams. The opinion states the case.

*Stemmons & Field*, for appellant.—The message did not disclose that the relation of brother and sister existed between "Rufe" and "Clara," nor do the allegations in the petition disclose that appellant had notice of the relationship existing between them at the time it contracted to transmit said message, and by reason of the want of notice of this fact appellant can not be held liable for the damages sued for herein. Tel. Co. v. Brown, 71 Texas, 724; Daniel v. Tel. Co., 61 Texas, 456; Gray on Com. by Tel., 148.

*Richardson & Watkins*, for appellee. — 1. On general demurrer every reasonable intendment arising from pleading will be indulged in favor of its sufficiency. Dist. Ct. Rule No. 17; Burks & Moore v. Watson, 48 Texas, 108; Prewett v. Farris, 5 Texas, 370; Johnson v. Dawling, 1 Ct. App. C. C., sec. 1094.

2. General notice of the importance of the message is all that is required, and it is not necessary that the company should be apprised of details, or that the same should be alleged, and this is especially true under general demurrers. 3 Suth. on Dam., 310, 311; 2 Redf. on Ry., 4 ed., sec. 22; Scott & Jarnigan's Law of Tel., secs. 406-8; Harrison v. Tel. Co.,

3 Ct. App. C. C., sec. 43; Tel. Co. v. McKinney, 2 Ct. App. C. C., sec. 645; Leonard v. Tel. Co., 41 N. Y., 54; Condee v. Tel. Co., 34 Wis., 471.

3.   A contract made for the benefit of another may be enforced by him.   Railway v. Levy, 59 Texas, 566; Sorelle v. Tel. Co., 55 Texas, 309; Stuart v. Tel. Co., 66 Texas, 581; 1 Pars. on Con., sec. 49.

4.   When notice of the main fact was given, defendant was chargeable with notice of every incidental fact that it could then have ascertained by proper inquiry, and notice of its importance without details is sufficient.   Tel. Co. v. Edsall, 74 Texas, 329; Tel. Co. v. Sheffield, 71 Texas, 570; 3 Suth. Dam., secs. 310, 311; Scott & Jarnigan Law of Tel., 406–8; 2 Redf. on Rys., 4 ed., sec. 22; Harrison v. Tel. Co., 3 Ct. App. C. C., sec. 43; Tel. Co. v. McKinney, 2 Ct. App. C. C., sec. 645; Rittenhouse v. Tel. Co., 44 N. Y., 263; Condee v. Tel. Co., 34 Wis., 471; Leonard v. Tel. Co., 41 N. Y., 53.

HENRY, ASSOCIATE JUSTICE.—Appellee brought this suit to recover damages for defendant's delay in delivering the following message:

"WACO, October 12, 1887.

"*To F. E. Adams, Athens:*

"Clara, come quick.   Rufe is dying.

[Signed]                                                 "O. M. SIMMONS."

His allegations are that said message was delivered to appellant's agent at Waco about 10 o'clock of said day, and that the message was not delivered to appellee until shortly before noon on the 13th day of October, 1887; that appellee was a merchant in Athens, residing there, doing business in the postoffice building, within one hundred yards of defendant's office, and on the public square, and that his residence was within one hundred yards of defendant's office; that appellee was well known to the residents of said town; that there were then two trains daily from Athens to Waco, one at ten o'clock and fifty minutes in evening, the other at seven o'clock and five minutes in the morning, and that on the morning of the 13th of October there was an accommodation train which left Athens for Waco at ten o'clock; that appellee's wife took the first train going to Waco after receiving said message, arriving at Waco on the morning of October 14; that when she reached Waco her brother was dead and his body had been sent to a distant part of the State for burial; that they were compelled to take another train to the place of burial.   Her brother died about six o'clock in the evening of the 13th; that had the message been promptly delivered appellee's wife could have reached her brother in time to have been with him fourteen hours before his death, and if the message had been delivered before either of the trains on the morning of the 13th she could have been with him at least six hours before his death; that by reason of appellant's failure to promptly deliver said telegram, and of her being deprived of being with her brother in his last sickness,

she suffered great anguish, pain of mind, and was prostrated and broken down in body and mind, and was damaged in the sum of five thousand dollars; that plaintiff repaid Simmons the amount he paid for transmitting the telegram.

To this appellant answered by general demurrer and general denial. The general demurrer was overruled. The trial resulted in a verdict and judgment in favor of appellee for the sum of two thousand dollars and forty cents.

The evidence supported the pleading.

Appellant's proposition under its first three assignments is: "That the message did not disclose that the relation of brother and sister existed between 'Rufe' and 'Clara,' nor do the allegations in the petition disclose that appellant had notice of the relationship existing between them at the time it contracted to transmit said message, and by reason of the want of notice of this fact appellant can not be held liable for the, damages sued for herein."

The rule insisted upon by appellant is too restricted to be safely applied to communications sent by the electric telegraph.

Plaintiff seeks to recover damages on account of mental pain suffered by his wife because of her inability to be with her brother when he was dying. The allegations and the evidence show that her failure to be with him was on account of her failure to receive information of his condition in time to reach him by the means of conveyance that were at her command. It is difficult to conceive of any form of expression that would have more accurately conveyed to her the information intended than would that used in the telegram had it been delivered to her. If any diligence had been used for its delivery when it reached its destination she would not only have known the condition of her brother that it was intended to communicate, but would have known it in ample time to have reached him while living and conscious.

The mental pain suffered by her on account of being deprived of this privilege is recognized by the law as a ground for the assessment of damages against defendant if it was induced by its negligence. The contention of defendant, in effect, is that it can only be held liable for such damages as may be supposed to have been in the contemplation of the parties if the telegram was delayed in its delivery, and that no damage can be held to have been in contemplation of the defendant not suggested by the language of the dispatch, and that all that could be gleaned from this dispatch by its agents was that some person at Waco wanted some person at Athens named Clara to come quickly to Waco, because some person named Rufe was dying.

It seems to be well settled that telegraph companies are not charged with knowledge of the importance of delivering cipher dispatches. As in the nature of things they can not know the contents of such telegrams,

that mode of expression being adopted to keep them from knowing, the rule is a just one that preserves them from the responsibilities that such knowledge would impose on them.

There seems to be an effort to extend this rule beyond the occasion for it, and to practically make all telegrams expressed in abbreviated language cipher dispatches.

We think a distinction in this respect must be made between messages couched in terms intended to conceal their meaning and such as have no such purpose, but are intended to convey information by the use of no more words than are necessary when given their accustomed meaning.

It is well known to the public, and can not be unknown to telegraph companies, that the utmost brevity of expression is cultivated in correspondence by telegraph. It is as well known that that mode of communication is chiefly resorted to in matters of importance, financially and socially, requiring great dispatch.

When such communications relate to sickness and death there accompanies them a common sense suggestion that they are of importance, and that the persons addressed have in them a serious interest.

It would be an unreasonable rule, and one not comporting with the uses of the telegraph, to hold that the dispatcher will be released from diligence unless the relations of the parties concerned, as well as the nature of the dispatch, are disclosed.

When the general nature of the communication is plainly disclosed by its terms, instead of requiring the sender to communicate to the unwilling ears of the busy operator the relationship of the parties concerned, a more reasonable rule will be, when the receiver of the dispatch desires information about such matters, for him to obtain it from the sender, and if he does not do so to charge his principal with the information that inquiries would have developed.

A witness was permitted to testify that Mrs. Clara Adams, while waiting for a train to Waco after the message had been delivered to her, seemed to be in great distress, and said that she would give everything that she possessed to see her brother and talk to him before he died.

As the jury would be instructed that they might, in assessing damages, include her mental anguish in their estimate, it was doubtless thought that evidence of her mental condition, including expressions of it at the time, might be given. As juries may from their own knowledge and experience of human nature estimate damage proceeding from that cause without any evidence, it is not important to produce it, and when produced it ought not, as a general rule, to have a controlling effect; and yet we are not able to see why the fact that mental anguish was felt and was exhibited by speech or otherwise may not be proved for what it may be worth. It at least furnishes no ground for setting aside a verdict that might be sustained without any evidence as to the existence or degree of

mental pain.    1 Greenl. on Ev., sec. 102;  Whart. on Ev., secs. 268, 269.

It is urged that "the court erred in that part of its charge wherein it instructed 'that if such telegram was sent by Simmons for the benefit of Mrs. Clara Adams, and that she has paid back the charges for sending it, then the husband would have a legal right to sue for a breach of the contract,' etc.; because, first, defendant had no notice that the contract was made for Clara Adams; and second, it had no notice or information that 'Clara' named in said message meant 'Clara Adams,' the wife of plaintiff."

If in fact the message was sent for the benefit of Mrs. Adams, and she was the damaged party, we can see no good reason why her husband may not maintain the suit.    Aiken v. Tel. Co., 5 S. C., 369;  Tel. Co. v. Dryburg, 35 Pa. St., 303;  Ellis v. American Tel. Co., 13 Allen, 226;  Sherm. & Redf. on Neg., p. 642.

The party to be in fact accommodated, benefited, or served holds the beneficial interest in the contract.    When that one sustains damage from its breach a right of action arises in his favor.    We do not attach importance to the reimbursement of the fee for sending the dispatch to the party who paid it.    Unless a right of action exists independently of that, it can not be maintained.    If the person sending and paying for the dispatch was not at the time of performing those acts the agent of the sender, he can not be afterwards made such, so as to give a right of action for large damages, by being refunded the fee paid for the dispatch.    At most all that that transaction can amount to, in any case, will be to give to the party that refunds it a cause of action for the amount refunded in a court having jurisdiction of it.    If it is paid under such circumstances as to become a debt from the person for whose use the dispatch is sent to the sender, the collection of it will be between themselves, and with that the corporation can have no concern.    If it is refunded by the party having otherwise a cause of action against the corporation, it may be included and recovered in the suit brought for the other cause.

We think the question as to who may maintain a suit for damages for the breach of contract does not depend upon the payment of the fee, nor upon the question whether the sender had been previously constituted an agent for that purpose by the party to whom the dispatch is sent, but upon who in fact was to be served, and who is damaged.

If it was intended to serve the receiver, and he accepts the act, we are unable to see why the telegraph company should be excused from the consequences of its neglect to discharge its own duty by reason alone of its ignorance of the relations that may exist between the sender and the receiver of the message.

If the sender, from motives of friendship or any other cause, is willing to confer upon the receiver a benefit, and he is willing to accept it, and out of the transaction there results damage for somebody to receive and

for the corporation to pay, the want of the technical relationship of principal and agent between the other parties ought not to enure to the benefit of the telegraph company to the exclusion of the only party for whose use the other parties intended the transaction.

A charge to the jury that plaintiff could recover the toll paid for transmitting the message is objected to upon the ground that as defendant performed its contract for transmission and delivery of said message, a delay in its execution does not authorize a recovery of the money paid for the performance of the contract. No authorities are quoted in favor of this proposition, and we know of none. A prompt delivery was of the essence of the contract, and a failure in that respect was such a breach of it as to authorize the recovery back of the consideration paid for it, if a right to do so could be maintained in other respects.

It is contended that "the court erred in not setting aside the verdict, because it is excessive in amount, because if the telegram had been promptly delivered plaintiff's wife could not have reached her brother until after he became unconscious." The facts do not sustain this assignment, and it therefore becomes unnecessary to comment upon it in other aspects.

We find no error in the proceedings for which we think the judgment ought to be reversed, and it affirmed.

*Affirmed.*

Delivered December 20, 1889.