WESTERN UNION TELEGRAPH CO. v. GOLDWIRE.

(Court of Civil Appeals of Texas. Austin. Nov. 20, 1912. Rehearing Denied Dec. 18, 1912.)

TELEGRAPHS AND TELEPHONES (§ 67*)—ACTIONS FOR DAMAGES — DAMAGES RECOVERABLE.

Where the agent of a telegraph company knew that gasoline engines were used to pump water for irrigation, and the agent of the sender of a message requesting the engine manufacturer to send him duplicate parts of a gasoline engine used for irrigation to replace those broken stated that the message was important, and that the repairs were badly needed, damages for loss of crops may be recovered as part of the damages arising from delay in shipment owing to the negligent transmission of the message; such damages coming within those that might reasonably have been contemplated.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68; Dec. Dig. § 67.*]

Appeal from District Court, Tom Green County; J. W. Timmins, Judge.

Action by H. C. Goldwire against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Harris & Harris, of Ballinger, for appellant. Hill, Lee & Hill, of San Angelo, for appellee.

KEY, C. J. During the year 1910 appellee, H. C. Goldwire, was engaged in farming in Tom Green county, and was cultivating about 100 acres of land under a system of irrigation, which consisted in pumping water from a river and distributing it over the land in ditches. The pump was operated by means of a gasoline engine, and on the 19th day of July the engine exploded, broke, and wrecked its base, and broke some other pieces which rendered the engine useless until new parts could be secured to take the place of those that were broken. Thereupon, and on the same day, appellee sent his son, Harvey Goldwire, to San Angelo, the county seat of the county, located 15 miles from appellee's farm, with a written message to be sent by telegraph in order to secure the necessary pieces to repair the engine and pump. The message referred to read as follows: "San Angelo, Texas, July 19th, Charter Gas Engine Co. Sterling, Illinois. Ship by freight promptly both sections of base for Charter twenty 2475, 1 gasoline pump bracket, 1 lower connection for 74, 1 cast brace for gasoline pipe on lower base. Will give note payable December. Rush shipment. Write prices and time shipment will probably arrive. H. C. Goldwire." About 4 o'clock that afternoon, Harvey Goldwire, acting as agent for H. C. Goldwire, delivered the message to appellant's agent in San Angelo, who received and accepted it under a contract which obligated appellant to exercise proper care to promptly transmit the message and deliver it to the Charter Gas Engine Company, at Sterling, Ill. The clear and undisputed proof shows that proper care was not exercised, and that, when the message was delivered to the Charter Gas Engine Company, the first part of it was changed so that it read "both sections of hose," instead of "both sections of base," and that mistake resulted in such delay as caused a very considerable injury to appellee's crops of corn, cane, alfalfa, potatoes, melons, and onions, then growing upon the 100 acres of irrigated land, and appellee brought this suit to recover damages resulting from that mistake and the consequent delay, and from a verdict and judgment in his favor for $475 appellant prosecutes this appeal.

The main question presented in appellant's brief, and the only one we care to consider at any length in this opinion, is embraced in the contention that the damages sued for and

recovered are too remote to form the basis of legal liability. Appellee alleged in his petition that at the time the message was delivered to appellant's agent, and the contract entered into for its transmission and delivery, appellee's agent informed appellant's agent, with whom the contract was made, of the contents and meaning of the message, and of its importance. It was also alleged that the system of irrigation employed by appellee was in general use in that section of the state, and that appellant's agent who accepted the message was cognizant of such general use, and that by the terms of the message he knew, or by the exercise of reasonable diligence could have known, that appellee was using a gasoline engine for irrigation purposes, and was urgently in need of the parts ordered by the message, etc. In reference to notice, other than that disclosed by the face of the message, Harvey Goldwire testified as follows: "Yes; I did on July 19, 1910, deliver to an agent or an employé of the Western Union Telegraph Company, in their office at San Angelo, Tex., a telegraphic message, the purpose of which was to secure and receive the repairs for a pumping engine belonging to my father as quickly as possible. At the time I delivered said message, I told the employé that the message was very important. I read it over to him, and asked him to rush same while paying the fee. Yes; I did say something to him about the importance of the message. I told him that the message was important, and that we needed the repairs mentioned in the message very bad and as soon as we could get them. * * * I gave him the message when I first entered the office. It was about 4 o'clock as near as I can recollect, about 4 p. m., and I told him to send it as soon as possible by night letter, and to rush it, as it was very important. I also took the message then and read same over to him in an explanatory way so he would understand it. This was while he was partly holding the message in his hands between us. Don't recollect of any other conversation had, or that he made any reply, only as to the amount of the fee which he stated when I paid him."

It was shown that at the time in question gasoline engines were being used in that section of the state for various purposes, and, among others, for operating irrigating plants. There was no proof that appellant's agent who made the contract had actual knowledge that such engines were being used to pump water for irrigation purposes; and he testified that, while he had resided in San Angelo several years at that time, if he had been asked if such engines were being used in that country in any way, he would have answered yes, but would have stated that he did not know for what purpose they were used. He also testified that he did not know they had been lifting water out of the river by machinery, and that he had never seen

them exhibit machinery on the street for that purpose, but later on he said: "From my residence in this country I know, in a general way, that gasoline engines were used for various purposes. I heard them being mentioned as being used for this, that, and the other. I have had no experience with them." It was also shown that at the time in question the agent referred to was not acquainted with appellee, Goldwire, and did not know that he was engaged in farming, nor that he was using a gasoline engine for the purpose of irrigating his crops.

The jury had the right to accept the testimony of Harvey Goldwire as true, and, so accepting it, and considering the words of the telegram in connection with it, we hold that the damages recovered are not too remote. In the celebrated case of Hadley v. Baxendale, 9 Exch. 353, the general proposition was announced that: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." The rule there announced has been generally accepted by the courts, but there has been diversity of opinion in its application. Some courts have declared that upon a given state of facts it should be held that the parties should reasonably be supposed to have in contemplation the injuries which resulted from a breach of the contract, although such injuries constituted special damages; while other courts upon similar facts have held just the reverse. The diversity of opinion referred to has existed in our own state, and in the decisions of our court of last resort, as will appear by reading Telegraph Co. v. Brown, 71 Tex. 724, 10 S. W. 323, 2 L. R. A. 766, and Western Union Telegraph Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920. In the Brown Case, supra, the message read: "Willie died yesterday evening at 6 o'clock. Will be buried at Marshall Sunday evening." And in the Adams Case the message read: "Clara, come quick. Rufe is dying." In the Brown Case it was held that the message did not import any family relationship between Willie and the person to whom it was addressed so as to affect the agents of the telegraph company with notice of such relationship; while exactly the reverse was held in the Adams Case; and in the latter case the Supreme Court said: "It seems to be well settled that telegraph companies are not charged with knowledge of the importance of delivering cipher dispatches. As in the nature of things they cannot know the

contents of such telegrams, that mode of expression being adopted to keep them from knowing, the rule is a just one that preserves them from the responsibilities that such knowledge would impose on them. There seems to be an effort to extend this rule beyond the occasion for it, and to practically make all telegrams expressed in abbreviated language cipher dispatches. We think a distinction in this respect must be made between messages couched in terms intended to conceal their meaning and such as have no such purpose, but are intended to convey information by the use of no more words than are necessary when given their accustomed meaning. It is well known to the public, and it cannot be unknown to the telegraph companies, that the utmost brevity of expression is cultivated in correspondence by telegraph. It is as well known that that mode of communication is chiefly resorted to in matters of importance, financially and socially, requiring great dispatch. When such communications relate to sickness and death, there accompanies them a common-sense suggestion that they are of importance, and that the persons addressed have in them a serious interest. It would be an unreasonable rule, and one not comporting with the uses of the telegraph, to hold that the dispatcher will be released from diligence unless the relations of the parties concerned, as well as the nature of the dispatch, are disclosed. When the general nature of the communication is plainly disclosed by its terms, instead of requiring the sender to communicate to the unwilling ears of the busy operator the relationship of the parties concerned, a more reasonable rule will be when the receiver of the dispatch desires information about such matters, for him to obtain it from the sender, and, if he does not do so, to charge his principal with the information that inquiries would have developed." The Adams Case is cited and quoted from by our Supreme Court in the very recent case of Western Union Telegraph Co. v. True, 148 S. W. 561, in which case Mr. Justice Dibrell, in the course of his able and satisfactory opinion, said: "There is in this state a recognized principle of law, which we desire to invoke as of controlling effect in the case at bar, and that is, where the language of the telegraphic message is sufficient in itself to disclose the general nature of the communication, it devolves upon the agent receiving the message to make inquiry of the sender as to the nature of the message, and by this means to gain fuller information as to the transaction or matter about which the message relates, and upon a failure to make such inquiry his principal will be charged with the information that such inquiry would have developed. Western Union Telegraph Co. v. Adams, supra; Western Union Telegraph Co. v. Turner, 94 Tex. 308, 60 S. W. 432; Erie Telegraph Co. v. Grimes, 82 Tex. 95 [17 S. W. 831]; West-

ern Union Tel. Co. v. Ward, 19 S. W. 899; West. U. Telegraph Co. v. Hargrove, 14 Tex. Civ. App. 79, 36 S. W. 1079. When J. R. True said to the defendant's agent at Ryan, 'This message pertains to a cattle deal which might cause me to lose several thousand dollars if I fail to receive it,' such agent, when considering that information, could not help but know at least the general nature of the message, and it was his duty, if any further information was desired upon the subject, to have made inquiry of True, and upon his failure to do so his principal will be charged with such knowledge of the transaction between Davidson and True as might have been gained by such inquiry." In the True Case the message read: "Parties failed to arrange deal. If you want cattle come here." The message was addressed to J. R. True at Ryan, I. T., and Mr. True testified that he informed the agent at Ryan that he was expecting a message, that it pertained to a cattle deal, and that he might lose several thousand dollars if he failed to receive the message. The Supreme Court held that the information thus imparted was sufficient notice to entitle True to recover as special damages the profits he would have made by purchasing certain cattle, if the message had been transmitted and delivered in accordance with the contract.

In the case at bar the message indicated upon its face that it was sent for the purpose of speedily securing certain things that were necessary in the use of a gasoline engine and pump; and, while the agent who represented appellant in the transaction first gave testimony tending to indicate that he did not know for what particular purpose gasoline engines were being used in that locality, he finally stated that he knew in a general way that they were in use for various purposes, and that he had heard them mentioned as being used for this, that, and the other purpose. It was not shown that they were generally used for some one purpose other than pumping water for irrigation plants, and therefore that their use for the latter purpose was not to be anticipated or expected. In fact, an article may be of such common use in a particular locality as to charge everyone with a knowledge of such use; while in another locality its use for that purpose may be so rare that no one would be required to anticipate such use. Such difference in use constitutes the main, if not the only, distinction between general and special damages.

In this case, as said before, the language of the message indicated that appellee desired a speedy shipment of certain articles to be used in connection with a gasoline engine and pump; and appellee's agent testified that he explained the message to appellant's agent, told him that it was very important, "and that we needed the repairs mentioned in the message very bad, and as soon as we could get them," and that he asked the agent to rush the message. That statement to appel-

lant's agent constituted direct and specific notice that the articles ordered were needed for repairs in connection with an engine and pump, and that it was very important to the sender of the message that the articles referred to should be shipped as soon as possible. In substance, the only difference between this and the True Case in reference to the notice communicated to the agent is that in the True Case the agent was notified that, if the message was not delivered, True might lose several thousand dollars, while in this case the agent was informed that the articles ordered were needed for the purpose of repairing an engine and pump, and that it was very important to the sender that the articles should be received as soon as possible. Under such circumstances, we hold that, if appellant had desired further information concerning the contemplated use of the engine, it should have made further inquiry before accepting the message under the contract as made. We are gratified to note that the modern tendency of judicial decisions is to break away from and leave behind the strickness of what was once supposed by some courts to be the doctrine of Hadley v. Baxendale. To the mind of the writer, it has never seemed to be entirely right and just to permit a wrongdoer to say that he ought not to be held liable because he did not know or suppose that his wrongful conduct would cause the other party as much injury as it did; and this is especially true with reference to telegraphic messages and contracts by telegraph companies to correctly transmit and deliver them. The very fact that a person resorts to that more expensive but speedier means of communication, constitutes notice that the matter is of some importance. And, as said by our Supreme Court in the Adams Case, it is a matter of common knowledge that brevity of expression is cultivated in correspondence by telegraph; and therefore it is not unreasonable to hold that when the telegraph company has notice, either from the face of the message or from any other source, that the message is very important to either or both the sender or the person to whom it is addressed, such notice should be sufficient to authorize a recovery of whatever damages may result from a failure on the part of the telegraph company to comply with its contract to promptly transmit and deliver the message.

The assignments presenting other questions have been considered, and it is not believed that they show reversible error. While the court's charge on the measure of damages may not have been entirely correct, yet, as the amount of damages awarded by the verdict was very much less than the uncontroverted testimony tended to show, we feel satisfied that the jury was not misled by the charge, and we have no reason to suppose that the correction of that error upon another trial might lead to a result more favorable to appellant.

No reversible error has been shown, and the judgment is affirmed.

Affirmed.