## WESTERN UNION TELEGRAPH CO. v. HILL.

(Court of Civil Appeals of Texas. El Paso. June 26, 1913. On Rehearing, Dec. 18, 1913. Rehearing Denied Jan. 8, 1914.)

### On Rehearing.

1. APPEAL AND ERROR (§ 743*)—ASSIGNMENTS OF ERROR—SUFFICIENCY—RULES OF COURT.

An assignment of error, though not conforming to Courts of Civil Appeals rule 25 (142 S. W. xii), requiring assignments to refer to that portion of the motion for new trial in which the error is complained of, will be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2990, 3011; Dec. Dig. § 743.*]

2. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR—ERRONEOUS RULINGS ON PLEADINGS.

The error in overruling special exceptions to the allegations of the petition, bearing only on the question of the damages recoverable, and in admitting evidence in support of the allegations, is harmless, where the court in its instructions directs the jury not to consider the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

3. LIMITATION OF ACTIONS (§ 138*) — COMMENCEMENT OF ACTION — ISSUANCE AND SERVICE OF CITATION.

Where plaintiff filed a petition before the running of limitations, and prayed therein for issuance of a citation, and in good faith intended that process should at once issue and be served, and he gave a bond for costs, which entitled him as a matter of right to the issuance of a citation before the running of limitations, and both parties proceeded on the theory that defendant was in court, and the fact that citation had not been served was not discovered until limitations had run and the parties had gone to trial after a continuance, the action was not barred by limitations, since plaintiff and his counsel were not responsible for the failure of the clerk to perform his duty and issue citation.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 573; Dec. Dig. § 138.*]

4. TELEGRAPHS AND TELEPHONES (§ 66*)—DELAY OF MESSAGES—NEGLIGENCE—EVIDENCE.

In an action against a telegraph company for delay in the delivery of a message, evidence held to support a finding that the company negligently delayed the telegram.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 61–63; Dec. Dig. § 66.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

5. TELEGRAPHS AND TELEPHONES (§ 37*)—DELIVERY OF MESSAGES—SUFFICIENCY.

Where a telegram is addressed to the addressee in care of another person, a delivery to either, if promptly made, is a performance of the telegraph company's duty; but a delivery at the office of such person to another having no authority to receive telegraph messages is not a sufficient delivery.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 23, 24, 29, 30, 32; Dec. Dig. § 37.*]

6. TELEGRAPHS AND TELEPHONES (§ 71*)—DELAY IN DELIVERY OF MESSAGES—DAMAGES —EXCESSIVE DAMAGES.

A verdict for $1,500 for delay in the delivery to the sendee of a message announcing the illness of his wife, thereby preventing him from reaching her until the illness had so far progressed as to render her practically unconscious and render her unable to converse with him or recognize him, and so remaining until her death a few days later, was not excessive.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 74; Dec. Dig. § 71.*]

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by C. S. Hill against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Affirmed, and motion for rehearing overruled.

Geo. H. Fearons, of New York City, and Beall & Kemp, of El Paso, for appellant. Coldwell & Sweeney, of El Paso, for appellee.

HIGGINS, J. This suit was instituted by Hill against the appellant for damages alleged to have been sustained by reason of delay in delivery of a telegram delivered to appellant for transmission and delivery to appellee at Ft. Worth, Tex. Upon trial before a jury, verdict was rendered in appellee's favor for the sum of $1,500, and judgment thereon was accordingly rendered.

An inspection of the assignments of error herein as they appear in the record discloses that they do not comply with that provision of rule 25 for the government of the Courts of Civil Appeals (142 S. W. xii) as amended January 24, 1912, requiring assignments to refer to that portion of the motion for a new trial in which the error is complained of. Because of the failure of the assignments of error, as they appear in the record, to comply with this provision of the rule, the same will therefore not be considered. In an opinion rendered upon rehearing in El Paso Electric Railway Company v. Lee, 157 S. W. 748, recently filed, and not yet reported, we at length state our reasons for declining to consider assignments of error which do not comply with said amended rule. We here now refer to this opinion as stating in full our reasons for declining to consider the assignments in this case. We also refer to the following additional authorities: Railway Co. v. Pemberton, 155 S. W. 652; Davidson v. Patton, 149 S. W. 757; Murphy v. Earl, 150 S. W. 486; Railway Co. v. Ledbetter, 153 S. W. 646; Railway Co. v. Gray, 154 S. W. 229; Jones

v. Edwards, 152 S. W. 727; Allen v. Kitchen, 156 S. W. 331; Railway Co. v. Emerson, 152 S. W. 469; Nunn v. Veale, 149 S. W. 758; Astin v. Mosteller, 152 S. W. 495; Wright v. Wright, 155 S. W. 1015; Railway Co. v. Cummins, 156 S. W. 542; Elmo Rock Co. v. Sowders, 155 S. W. 270; Lee v. Moore, 162 S. W. 437; Brewer v. Blythe, 158 S. W. 786; Benton v. Kuykendall, 160 S. W. 438; and Railway Co. v. White, 160 S. W. 1128; the last four cited cases recently decided by the Dallas Court of Civil Appeals, and not yet officially reported, but are cited in Railway Co. v. Cummins, supra.

It is a matter of regret to the court that it should be called upon in this cause to enforce the provisions of the amended rules, for the reason that the distinguished counsel who represent the appellant are unusually observant of the rules, and rarely, if ever, has this court been called upon in their cases to overlook violations thereof. In this particular case, the nonobservance was, no doubt, due to an inadvertence, which in turn was doubtless due to the fact that the amendments were of comparatively recent date. We deferred enforcing the amendments until a sufficient time had elapsed to permit the members of the bar to become familiar therewith, and, after the lapse of such time, we deem it our duty to rigidly enforce the same. From the number of records recently filed in this court in which the amendments are disregarded, it is evident that in no other manner can their observance be enforced.

Affirmed.

On Rehearing.

[1] The action of the Supreme court in granting a writ of error in El Paso Electric Railway Co. v. Lee, 157 S. W. 748, indicates its disapproval of this court's holding that rule 25 (142 S. W. xii) requires that assignments of error shall refer to that portion of the motion for a new trial in which the error is complained of. It therefore becomes our duty to pass upon the assignments of error herein, which we originally declined to do, because of their failure to comply with the rule indicated.

On February 26, 1910, appellee filed suit against the appellant to recover the sum of $1,950 damages, alleged to have been sustained by reason of alleged delay in the transmission and delivery of a telegram, advising him of the illness of his wife. It was averred that on February 27, 1909, plaintiff was temporarily in Ft. Worth, Tex., and his wife was quite sick at his residence in the city of El Paso, which sickness was unknown to him; and on the morning of that day, Dr. King, the attending physician of his wife, acting as his agent, caused to be delivered to defendant, the following telegram: "Feb. 27, 1909. To C. S. Hill, Ft. Worth, Texas, care of J. C. Hill First National Bank. Mrs. Hill has La Grippe, think

best you come. [Signed] 'Dr. King." That upon the delivery of said telegram, defendant's agent in charge of the receiving office, and to whom the message was delivered, was informed that the matter was one of life and death. That said message was received by defendant for transmission and delivery to plaintiff or to said J. C. Hill, and that defendant knew of the condition of plaintiff's wife and her relationship to him; that defendant negligently failed to transmit and deliver said message to plaintiff or to said J. C. Hill at said First National Bank, or anywhere else, although several times during the day mentioned, after the time said message should have reached Ft. Worth, plaintiff was at defendant's office in Ft. Worth and inquired of defendant's agents in said office if they had any message for him. That he was at such office and made such inquiries because he was then expecting to receive a telegram on other matters from another point; that if said message had been delivered to plaintiff or any one for him in due time, he could and would have at once started for El Paso, and would have reached there about noon on February 28th; that his wife's sickness almost immediately developed into pneumonia, as was natural and to be expected, and as defendant was informed when it received said message for transmission. That El Paso is very high above the sea level and such altitude is a circumstance which renders pneumonia doubly dangerous, and that the best course in cases of pneumonia is to at once remove the patient to a lower altitude, and that, but for defendant's negligence in failing to transmit and deliver said message with reasonable dispatch, the plaintiff would have reached El Paso in time to remove and would have removed his wife to a lower altitude; that by reason of such negligence he did not reach El Paso until noon, March 2d, and found his wife practically unconscious and unable to speak and too weak to be removed, to which condition she had been reduced in the 24 hours just preceding, and that, by reason of said weakness, plaintiff was unable to so remove his wife or to converse with or be recognized by her; that she died a few days after his arrival, without at any time becoming able to speak to or recognize plaintiff, and that her death was in all probability occasioned by the fact that she was not removed to a lower altitude in the time that she would have been removed but for defendant's negligence aforesaid. The usual further allegations were made with reference to the items of his damage, and concluded with a prayer for issuance of citation and judgment for damages.

Defendant answered by (a) general demurrer; (b) special exception to that portion of the petition, "but for the defendant's negligence plaintiff would have reached El Paso in time to have removed and would have removed his wife to a lower altitude, and that but for defendant's negligence he would

have removed his wife in time to have saved her life," because the items of damage sought to be recovered by reason thereof were too remote, speculative, and uncertain to authorize a recovery; (c) general denial; and (d) special plea that the petition was filed on February 26, 1910, and that the suit was for damages based upon alleged negligent failure to deliver above message; that on August 16, 1910, a motion was filed by the clerk of the court to require plaintiff to give cost bond, and that the cost bond was not filed until September 7, 1910, and that citation was not issued and served upon defendant until June 8, 1911, more than two years after the plaintiff's cause of action accrued; wherefore the cause of action was barred by the two-year statute of limitation, which was pleaded in bar. Upon trial, verdict in the sum of $1,500 was returned, upon which judgment was rendered, and from which this appeal is prosecuted.

[2] The first assignment complains of the overruling of the special exception above noted, and the fourth, to the action of the court in permitting plaintiff Hill to testify that he would have removed his wife to a lower altitude, and that he believed such removal to a lower altitude was good for diseases such as she was suffering from, and, in his opinion, at that time it was his duty to remove his wife; that he told his brother he was going to move her to Ft. Worth if she was able to be moved, but that she was not removed, because Dr. King told him she was too weak for that purpose. The exceptions should have been sustained and the testimony indicated excluded, but the court in his general charge carefully excluded from the consideration of the jury any elements of damage which they might otherwise have considered in relation to the exception and evidence, and further, at the request of defendant, gave a special charge directing the jury not to consider any of such evidence. This rendered harmless the erroneous action of the court in the respect indicated.

[3] A peremptory instruction was given against appellant upon the issue of limitation raised by its pleading. This is made the basis of the second assignment, and by the third assignment complaint is made of refusal of a special charge requested by appellant as follows: "You are instructed that, under the law, it was the duty of plaintiff to commence and prosecute his suit within two years after his cause of action accrued; and that said cause of action accrued, as shown by appellee's petition, on the 27th day of February, 1909. If, therefore, you find from the evidence that plaintiff, after filing his said petition, failed to procure the issuance and service of citation upon defendant until more than two years elapsed after his cause accrued and the filing of said petition, which was on the 26th day of February, 1910, and the issuance and service of citation upon said defendant, which was on the 8th day of Sep-

tember, 1911, and if you further find that said delay was unreasonable, and you so find from all the evidence in the case, then your verdict should be for the defendant, otherwise for the plaintiff as to said issue." It is urged first, that although plaintiff filed his petition in due time, the undisputed evidence discloses he failed to prosecute his suit by having citation issued and served until more than two years had elapsed after the accrual of the cause of action, and second, under the statute of limitation pleaded, plaintiff was required to commence and prosecute his suit within two years after the accrual of the cause of action, and the cause of action did accrue more than two years before the issuance and service of citation, and, if parol evidence was admissible for the purpose of excusing such delay, it was for the jury to determine whether or not the delay was reasonable, and such issue should have been presented by the special charge quoted.

W. M. Coldwell, appellee's attorney, testified: "I am the Coldwell, of Coldwell & Sweeney. The petition in this case was filed the day it purports to be. My own memory is that it was about that time. It was in my own writing, and filed with the clerk. I told the clerk to issue citation and went out. As I was going out he said: 'Will you give cost bond?' I said yes. He did not say anything about not issuing citation. He told me he wanted a cost bond; we told him we would give him a cost bond. I heard no more about the cost bond until I think he sent me a notice of the motion for costs, through the mail, to Coldwell & Sweeney to file a cost bond. I still thought citation had been issued. I had had a conversation with the attorneys for the defendant about the case, and afterwards we set it. We set cases here two months in advance. The case was set for trial and passed by consent of both parties. It was set again, and when we started into the trial, on the morning of it, why, the attorney for the defendant, Mr. Maury Kemp, told me there had been no service of citation. This was long after the case had been filed. I looked into the papers and did not see any citation, and then went into the clerk's office and ordered citation. I thought all the time citation had been issued and served." Cross-examination: "I don't think I ever saw any answer of the defendant in the case at the time I opened the papers at the time of going to trial. I supposed, of course, you had filed an answer because we had spoken about it. Of course, if any answer was filed, there was no need of citation. But, in speaking about the case, I supposed, of course, you had been notified and filed an answer."

The only possible respect in which appellee could be held chargeable for delay in the issuance of the citation was the failure to file cost bond with his petition. Such cost bond was filed September 7, 1910, several months

162 S.W.—25

before the expiration of the two years. It further appears that a jury was demanded by the appellee and the jury fee paid on January 3, 1911; also, that the case was, by agreement, twice set for trial. It was not tried at the first setting and continued by agreement of the parties. At the next setting it was then discovered that citation had not been served. Appellee's counsel then at once proceeded to the clerk's office and caused the citation to be issued.

In Ricker v. Shoemaker, 81 Tex. 22, 16 S. W. 645, it is said: "All the elementary writers agree that, in order to stop the running of the statute of limitations by suit, not only must the initial step required by the statute be taken, but there must also be a bona fide intention that the process shall be served at once upon the defendant. Bus. on Lim., § 355; Wood on Lim., § 289; Angell on Lim., § 312; and such is practically the ruling in this court. Veramendi v. Hutchins, 48 Tex. 532."

There is nothing whatever in the facts detailed above to indicate other than a bona fide intention that process should be at once issued and served, nor is there any fact after cost bond was filed to charge appellee with failure to have the same issued and served. His petition contained a request for the issuance of citation. He gave a bond for costs, which entitled him, as a matter of right, to the issuance of the citation long prior to the expiration of the two years, and it is plainly apparent further that the attorneys for both parties had proceeded upon the theory that the defendant was properly in court. The fact that citation had not been issued and served evidently was not discovered until the parties had started to go into trial upon the second setting. Appellee and his counsel are in no wise responsible for the failure of the clerk to perform his duty and issue citation. The court properly gave the peremptory instruction upon the issue of limitation. Ricker v. Shoemaker, supra; City of Belton v. Sterling, 50 S. W. 1027.

[4, 5] The fifth assignment is that the verdict and judgment is unsupported by and contrary to the evidence on the issue of negligence of appellant in making delivery of the telegram. The assignment is submitted as a proposition, and it is not apparent in what respect it is contended the evidence is insufficient, but, from the argument supporting the assignment, it appears that appellant's contention is that the telegram was delivered to the party in whose care it was addressed, and there is no evidence when appellee's brother received it; therefore no affirmative proof of negligence. The first information appellee had of the serious illness of his wife was about 10:50 p. m. on February 28th. He was then at the residence of his brother in the city of Ft. Worth, and by telephone was advised by the Western Union Telegraph Company of the

contents of a message for his brother, J. C. Hill, received from G. W. Payne in El Paso. This telegram does not appear in the record, but it is apparent from the evidence that it imparted information concerning the serious condition of appellee's wife, and on the following day, March 1st, he departed by first train for El Paso. He testified that the telegram, described in his petition, was not received by him until the morning of the day he left, and he received it at his brother's office, together with other mail; that the message was in a Western Union envelope, and came through the United States mail; that it had a postage stamp on it, and his brother had gotten it through the mail sometime during that morning. To rebut the deduction of negligence arising from this evidence, appellant offered in evidence its telegram delivery sheet, reading as follows: "The Western Union Telegraph Co's Delivery Sheet. February 27–28, 1909. Messenger No. 20. No. 87, Time 12:35 P. M., Signature J. Scanlon, Address C. S. Hill. Time delivered, 1 :05." Also the deposition of Ralph Markgraf, who testified by deposition that he was a messenger in the employ of defendant at Ft. Worth on February 27, 1909, and received the message in question for delivery and went to J. C. Hill's office and asked for C. S. Hill of a man who was in the office, and who told him that Mr. Hill was not in, but that he would receive the message for him. That this man signed for the message and he left it with him, but he did not know who the man was; that this party made a notation on the delivery sheet showing the time the message was received, and also signed his name as the receiver of the message; that he had made a statement in regard to the delivery of the message, which statement was attached to the deposition, and reads: "Statement of messenger No. 20 herewith. 'Received message No. 85 to deliver to C. S. Hill c/o J. C. Hill, First National Bank at 12:35 p. m., on February 27, 1909. Went to address and found building· was being demolished and could not deliver. Returned to office and was sent to Dundee Building where I delivered message to a party in J. C. Hill's temporary office. Told him who message was for and he signed for same at 1:05 p. m., February 27, 1909. See form 87 attached. Do not know party who signed for this and cannot locate him.' ". It therefore appears from the testimony of the messenger boy that he made delivery of the message at 1:05 p. m., February 27th, at the office of J. C. Hill to a party named J. Scanlon. There is no testimony in the record from Scanlon. If the testimony of the appellee detailed above be true, then it is evident that Scanlon was an imaginary person and the delivery story of the messenger boy a fabrication. An issue of fact is therefore raised as to whether or not the delivery was ever made as detailed

by the messenger. But concede delivery was· made to a party by the name of Scanlon in J. C. Hill's office, still this was not a delivery to either C. S. Hill or J. C. Hill, such as was required by the terms of the contract. It is, of course, true that if prompt delivery had been made to J. C. Hill, the measure of appellant's duty would have been fulfilled. Johnson v. Western Union Telegraph Co., 132 S. W. 814, and cases there cited; but the principle there recognized does not go· to the extent of authorizing delivery to parties who may be wholly irresponsible and unauthorized, and simply at the place of business of the party in whose care the message is directed. Delivery to Scanlon at the office of J. C. Hill was not such a delivery as was required by the terms of the contract in the absence of some showing of authority upon the part of Scanlon to receive telegraphic messages addressed to J. C. Hill. For both of the reasons indicated, the contention that the evidence is insufficient must be overruled.

[6] The sixth and seventh assignments complain of the verdict of the jury as excessive in amount, and the natural result of· sympathy aroused in behalf of appellee by his testimony, the admission of which was· the basis of the fourth assignment above quoted. The verdict is not regarded as excessive (Western Union Telegraph Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Same v. Piner, 9 Tex. Civ. App. 152, 29 S. W. 66), and there is no reason to believe that the jury disregarded the positive instruction of the court to exclude these matters from their consideration, as directed by the general charge and special charge given as above stated.

The motion for rehearing is overruled.