WESTERN UNION TELEGRAPH CO. v. GRESHAM et al. (No. 9338.)

(Court of Civil Appeals of Texas. Ft. Worth. May 15, 1920. Rehearing Denied June 26, 1920.)

1. **Appeal and error** ⊗⇒1011(1)—**Findings of trial court on conflicting evidence not disturbed.**

Findings of fact of the trial court with reference to matters with which the evidence is conflicting will not be disturbed on appeal.

2. **Telegraphs and telephones** ⊗⇒73(1)—**Negligence held question of fact.**

In an action to recover damages for mental anguish from a failure to promptly deliver a message announcing illness, negligence of defendant *held* a question for the trial court.

3. **Telegraphs and telephones** ⊗⇒71 — **$1,500 held excessive damages for delay.**

A verdict for $1,500 for mental anguish suffered from failure to promptly deliver a telegram announcing illness of plaintiff's mother *held* excessive, and is reduced to $750; plaintiff having received the message in time to attend the funeral.

4. **Appeal and error** ⊗⇒728(1)—**Assignment as to erroneous admission of evidence too general.**

An assignment, complaining of court's failure to sustain objections "to the question propounded by plaintiff's counsel to Mrs. G. and her answer thereto, wherein said witness was asked as to her feelings for her mother, and as to what her relation was toward her mother, and was permitted to answer that she and her mother were specially devoted," *held* too general to require notice.

5. **Telegraphs and telephones** ⊗⇒66(3) — **Evidence of relation held admissible to show damages.**

In an action to recover damages for mental anguish suffered from failure to promptly deliver a telegram announcing the illness of plaintiff's mother, court did not err in permitting plaintiff to testify that she was especially devoted to her mother.

6. **Appeal and error** ⊗⇒664(4)—**Statement of facts controls, where in conflict with bill of exceptions.**

In case of conflict between the bill of exceptions and the statement of facts, the lat-

ter, when agreed to by the counsel and approved by the court, will control.

**7. Telegraphs and telephones ⊕➡66(3) — Evidence of mental condition held admissible.**

In an action to recover damages for mental anguish suffered from failure to promptly deliver a telegram, announcing the illness of plaintiff's mother, who died before plaintiff received the message, court properly permitted plaintiff to testify that she was pained, and made "awfully nervous" by her inability to reach her mother; the condition of mind expressed by the term "awfully nervous" being a natural condition produced by a realization that she would be unable to see her mother alive.

**8. Telegraphs and telephones ⊕➡37(1)—Diligence in delivery required.**

It is the duty of telegraph company to exercise due diligence in attempting to deliver a message announcing the severe illness of the mother of sendee.

**9. Appeal and error ⊕➡1050(1)—In action for failure to deliver telegram, admission of evidence held harmless, in view of evidence unobjected to.**

If it was error, in an action for mental anguish resulting in failure to promptly deliver a message announcing severe illness of plaintiff's mother, to permit plaintiff to testify, in answer to a question whether or not she had anybody related to her living at town where message was received, "Yes, one J., and he was in the real estate business, and he had a telephone," the error was harmless, where six witnesses for plaintiff testified without objection that they were engaged in the merchant business at such place, and knew the plaintiff, and knew where she lived, and that if inquiry had been made of them they would have referred the person making the inquiry to the plaintiff.

Appeal from District Court, Erath County; J. B. Keith, Judge.

Suit by Mrs. Clem Gresham and husband against the Western Union Telegraph Company. Judgment for plaintiffs, and defendant appeals. Affirmed on condition of remittitur.

H. P. Brown, of Cleburne, Hickman & Morrow, of Dublin, and Thompson, Barwise, Wharton & Hiner, of Ft. Worth, for appellant.

Chandler & Pannill, of Stephenville, for appellees.

BUCK, J. [1] Suit was filed in the district court of Erath county by Mrs. Clem Gresham and her husband, J. R. Gresham, against the Western Union Telegraph Company, to recover damages for mental anguish suffered by Mrs. Gresham as the result of a failure of defendant to promptly deliver a telegram sent from Stephenville to Mrs. Gresham at Burkburnett, announcing that her mother, Mrs. J. C. Murray, was very low, and requesting Mrs. Gresham to come if she wished. The telegram was sent by Marvin Sharp, nephew of Mrs. Gresham and grandson of Mrs. Murray. The Murrays lived at Huckaby, some 12 miles from Stephenville. On the morning of May 30, 1917, Marvin Sharp testified that he, at the request of J. C. Murray, went to the office of the defendant at Huckaby for the purpose of sending the telegram, and found that the defendant's wires between Huckaby and Stephenville were down. He then went to the store of A. G. Sones, a merchant in Huckaby, and got Mr. Sones to phone to Stephenville the message, to be sent from Stephenville to Burkburnett. At about 6:30 p. m. of May 30th, while Marvin Sharp was at the depot at Stephenville waiting for another aunt, who was coming on the train, he was seen by defendant's agent T. P. Markham, and told that the telegraph company had been unable to deliver the message because Mrs. Gresham could not be found in Burkburnett. Sharp then told the agent of the company that his aunt lived at Speck's ranch, about 7 to 10 miles in the country. The agent of the company testified that this conversation occurred on June 1st. This conflict in the evidence the trial court decided in favor of the plaintiff, and with that conclusion, with reference to a matter about which the evidence is conflicting, the trial court's judgment is binding on us. The trial court found that on the morning of May 30th Marvin Sharp sent a telegram to the local agent of the defendant company at Stephenville to the plaintiff, Mrs. Gresham, at Burkburnett; that subsequently, on the evening of May 30th, Sharp talked to the agent of the defendant, and told him, in substance, that the addressee Mrs. Gresham, could be found at Speck's ranch, about 9 miles from Burkburnett, and to deliver the message regardless of cost, and the agent agreed to do so; that said Sharp stated to the agent that the delivery charges were guaranteed, and the agent agreed to transmit the message on that condition. The cause was tried before the court without the intervention of a jury, and a judgment was rendered for plaintiff in the sum of $1,500, from which judgment the defendant has appealed.

Appellant's first assigment of error complains of the excessiveness of the judgment. The evidence shows that upon the receipt of the telegram at Burkburnett the agent of the company sent a messenger with same for delivery, and he reported that he was unable to find the party, whereupon the message was placed in the post office. The Burkburnett agent testified:

"I inquired of merchants, bankers, garages, post office and the Burkburnett Telephone Company. I was unable to learn of the whereabouts of the addressee, Mrs. Gresham, and was unable to deliver the message."

He further testified that he immediately sent a service message to Huckaby on May

30th, advising the agent there that the message was undelivered because the addressee was unknown, and that he had mailed a copy of the message in the post office.

T. P. Markham, agent of the defendant company at Stephenville, testified to receiving this service message on May 30th, and that he notified a party at Huckaby, whom he supposed was Sharp, and that the party to whom he talked told him to let the message go by mail, and that he thought the Greshams lived about 9 miles in the country. That he sent to Burkburnett a message saying:

"Try phone nine miles from town. Ours date, Gresham. [Signed] Sharp."

That he got a reply from Burkburnett on May 31st as follows:

"Service yours 30th, Gresham signed Sharp still undelivered, unknown. No phone."

That when he got this second message from Burkburnett he called up the Huckaby office, and received the information that Sharp, the sender, was in Stephenville. That he was unable to get the Huckaby office on the night of May 31st, but phoned the next morning. That on receipt of the information that Sharp was in Stephenville he went out on the square and found Sharp in a car, just about to drive away from the front of a store, and at that time he got the information that Mrs. Gresham was 9 miles west on the Speck's ranch. That thereupon he sent to Burkburnett another message as follows:

"Claimed that Mrs. Gresham lives nine miles west on the Speck's ranch. Deliver by special messenger if necessary as quick as possible and get answer. We guarantee charges."

That he received the following answer from Burkburnett:

"Yours 30th, Mrs. Gresham signed Sharp now delivered ten A. M., no extra charges."

That he did not have any information prior to June 1st that Mrs. Gresham lived on the Speck's ranch, 9 or 10 miles from Burkburnett, but Sharp testified that he sent the first message by telephone to Stephenville on the morning of May 30th, that he talked to Markham that evening at Stephenville, and that said agent told him that the Burkburnett office had been unable to locate Mrs. Gresham, and that the message had been mailed. That he told the agent that the message was urgent matter, and that he had better send the telegram again in the same words, and that they would find Mrs. Gresham at Speck's ranch about 9 miles west of Burkburnett, and told him to deliver this message regardless of cost, and that the agent promised the company would do so.

[2] The evidence further shows that Mrs. Murray died about 10 o'clock on the morning of June 1st, and that if Mrs. Gresham had received the message on May 30th, or on May 31st, she could have reached her mother by the ordinary methods of travel in time to see her before she died. The evidence further shows that Mrs. Gresham had a son working in Burkburnett at the Service First Garage, and that said garage had a telephone; that Speck's ranch was a place well known in Burkburnett, and had a large number of people living on it, and that there were several telephones from Burkburnett to the ranch, but that the Greshams had no phone; that Mrs. Gresham first learned of the telegram about 11 o'clock on June 1st, and that then she went to the telephone company's general office and put in a call for home and talked to her brother, and learned that her mother had been dead something like an hour; that she left Burkburnett about 7 o'clock that night got into Ft. Worth about 6 or 7 o'clock the next morning and reached Stephenville about 12 o'clock. Hence we are unable to say that the court erred in finding that the telegraph company was negligent in its failure to deliver the telegram in time for Mrs. Gresham to reach her mother before she died. She did reach the home in time to attend the funeral, and the question presented by this assignment is as to the excessiveness of the judgment. In Western Union Telegraph Co. v. Bouchell, 28 Tex. Civ. App. 23, 67 S. W. 159, writ refused, this court held that a $1,250 verdict should be reduced to $500. In the cited case a daughter was prevented, by the defendant company's negligence in failing to deliver a message, from being with her father during the last 3½ hours of his life, during all of which period he was unconscious and in the throes of death, and the message was received in time for her to be present at the funeral. In Western Union Telegraph Co. v. Armstrong, 207 S. W. 592, the Texarkana Court of Civil Appeals required a remittitur of $750.64 of a $1,250.64 judgment. In this case the plaintiff was deprived of an opportunity to be with and nurse a sister during her last illness and to be present at the burial. See, also, Western Union Telegraph Co. v. Goodman, 217 S. W. 187, judgment reduced from $1,950 to $500. To the contrary, might be cited Western Union Telegraph Co. v. Johnson, 218 S. W. 781, in which the El Paso Court of Civil Appeals affirmed a judgment for $1,000 for mental anguish, caused a mother by failure to promptly deliver a message to her son, so that he could come to her in her bereavement on the death of her husband. Western Union Telegraph Co. v. Piner, 9 Tex. Civ. App. 152, 29 S. W. 66, writ denied, in which this court refused to hold excessive a verdict and judgment for $2,150 for the failure of the telegraph company to promptly deliver a message, informing a son of his father's illness in time for the son to reach his father's bedside before he became unconscious. Western Union Telegraph Co. v. Hill, 162 S. W. 382; Western Union Telegraph Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A.

844, 16 Am. St. Rep. 920. In the last-cited case by the Supreme Court, the party for whose benefit the message was sent was the sister of the sick man, and through the negligence of the defendant company she was prevented from being with her brother in his last illness. A judgment for $2,000 was affirmed. It does not appear that the question of excessiveness of judgment was directly before the court. The court said:

"It is contended that 'the court erred in not setting aside the verdict, because it is excessive in amount, because if the telegram had been promptly delivered plaintiff's wife could not have reached her brother until after he became unconscious.' The facts do not sustain this assignment, and it therefore becomes unnecessary to comment upon it in other aspects."

In the Hill Case, supra, the Supreme Court denied a writ of error from an affirmance by the Court of Civil Appeals at El Paso of the judgment for $1,500 for delay in the delivery to the sendee of a message announcing the illness of his wife, thereby preventing him from reaching her until the illness had so far progressed as to render her practically unconscious and render her unable to converse with him or recognize him.

[3] But the majority have concluded that the judgment herein rendered is excessive in the sum of $750. The view of the evidence entertained by the majority in that the case is a very close one on the issue of appellant's negligence, and hence of its liability for any damages. The evidence in appellant's behalf presents a clear case of due diligence, and sharply contradicts in material respects the testimony of Marvin Sharp, upon whose testimony the finding in appellee's favor must principally rest. In other words, the case for appellee seems to rest largely upon the testimony of the witness Sharp, appellee's nephew, and he upon cross-examination seems to have contradicted himself in an important particular. To illustrate, he testified:

"I was in Stephenville the evening of May 30th. The conversation was personal between Mr. Markham and myself. I told Mr. Markham at that time that if he had been unable to find Mrs. Gresham to send the telegram that evening again. I told him it wasn't necessary to change the wording of the telegram, because he already had one. He told me he would send it, and I told him Mrs. Gresham lived on the Speck ranch west of Burkburnett. That was on the evening of May 30th. I also said: 'Under the existing circumstances, we want the telegram to go regardless of the expense.' I don't remember anything else that I said. Mr. Markham never told me anything; only told me he would send the telegram. * * * I did have another conversation with Mr. Markham after May 30th. I was talking to him on the morning of May 31st. He told me he had sent the telegram. I advised him to send the evening before, but didn't know what they had done on the other end. There was no report made

to me by Mr. Markham nor any one else as to what had been done toward the delivery of that telegram, that I remember of. It is not true that a report was made that that telegram wasn't delivered, and on June 1st Mr. Markham was informed by me or some one at Huckaby for the first time that Mrs. Gresham lived at Speck's ranch 9 miles out. May 31st was the first time he was informed of that fact. Subsequent to May 30th I had no other conversation with Mr. Markham. I had no occasion to."

The evidence further shows that appellee visited her mother some three weeks previous to her death, and nothing in appellee's testimony indicates that there was any special reason for seeing her mother before her death, that is to say, nothing in the evidence indicates that the mother prior to her death expressed a wish for the presence of her daughter, or that the appellee desired to communicate any special message, and the telegram on its face, "Come if you wish," indicates that there existed no imperative reason in the minds of those sending the telegram why appellee should forthwith attend her mother; on the contrary, the indication from the telegram is that the father, and others prompting the sending of the message, felt that the attendance of appellee should be wholly dependent upon her simple desire. Nor does the evidence indicate any special bond of affection existing between appellee and her mother other than the one naturally existing between mother and daughter. And while the evidence tends to show that the mother was conscious until perhaps a very short time prior to her death, it fails to show just when her power of speech failed. Whether appellee could have reached her mother in time to have given comfort or needed relief, or to have received a parting benediction, is left largely to conjecture. Appellee was spared the distress of witnessing her mother's death struggle, but did receive the consolation of attending her funeral. So that, on the whole, as the majority view the testimony, it is thought that $750 will fully compensate appellee for her actual damages in the premises, and there is certainly nothing in the case calling for exemplary or punitive damages.

[4-6] The writer, while recognizing that the judgment rendered is for an amount in excess of what he might have rendered had he been the judge, yet further recognizes that the question of the amount of damages to be awarded is largely within the discretion of the trial court, and that, unless the verdict is so unconscionably large as to give rise to the inevitable conclusion on the part of the appellate court that bias or prejudice or some other improper motive must have entered into the verdict or judgment below, the court on review should not disturb the judgment of the trial court, is of the opinion that the judgment in this case

should not be disturbed for excessiveness. But since the question here involved is probably one of fact, and the conclusion of the majority upon this issue would be binding upon the Supreme Court, the writer does not feel it incumbent upon him to further express his disagreement with the conclusion reached by the majority. We find no error shown in the third assigment, which complains of the court's failure to sustain defendant's objections "to the question propounded by plaintiffs' counsel to Mrs. Clem Gresham and her answer thereto, wherein said witness was asked as to her feelings for her mother, and as to what her relation was toward her mother, and was permitted to answer that she and her mother were specially devoted." We think this assigment is too general to require notice, but we do not think that the evidence was improperly admitted. W. U. Tel. Co. v. Lydon, 82 Tex. 364, 18 S. W. 701. Mrs. Gresham testified:

"My mother and I had never been estranged. I have always loved her as any other child should a mother. Never had any hard feelings with her."

While the bill of exceptions states that Mrs. Gresham further stated, "I was especially devoted to my mother," yet no such statement is contained in the statement of facts, at least not in that part of it where the other testimony recited in the bill of exceptions is found. In the case of a conflict between a bill of exceptions and a statement of facts, the latter, when agreed to by the counsel and approved by the court, will control. Wiseman v. Baylor, 69 Tex. 63, 6 S. W. 743. Hence the appellant's third assignment is overruled.

[7] We find no error in the second assignment, which complains of the admission of certain testimony by the plaintiff, Mrs. Gresham, in answer to the effect it had on her when she found that the message had been delayed, and she could not reach her mother, which answer is as follows:

"Of course it pained me pretty bad and made me awfully nervous, and I did not know whether I could make the trip down here or not when I started."

Appellant objects to the statement that plaintiff was "awfully nervous." We think the condition of mind expressed by plaintiff's testimony was a natural condition produced by a realization that she would be unable to see her mother alive, and that it was prop-er to admit testimony of that fact. W. U. Tel. Co. v. Carter et al., 20 S. W. 834.

[8, 9] The fourth assignment complains of the admission of the testimony of Mrs. Gresham, in answer to the question whether or not she had anybody related to her living at Burkburnett:

"Yes, one John Gibbs, and he was in the real estate business, and he had a telephone."

The defendant's agent at Burkburnett testified:

"I sent the messenger boy from my office out all over the town to deliver the telegram and inquired from all parties likely to know where this party could be found, but no one seemed to know her. I inquired of all merchants, bankers, garages, the post office and the Burkburnett Telephone Company."

It was the duty of the defendant company to exercise due diligence in attempting to deliver the message. G., C. & S. F. Ry. Co. v. Wilson, 69 Tex. 739, 7 S. W. 653; W. U. Tel. Co. v. James, 31 Tex. Civ. App. 503, 73 S. W. 79, writ denied. Moreover, we think in any event the evidence was harmless, as the appellee was permitted to prove without objection by six witnesses that they were engaged in the mercantile business at Burkburnett and knew the plaintiff and knew where she lived, and that she and her husband were the only persons by the name of Gresham that lived at Burkburnett, or in the vicinity, and that if inquiry had been made of them as to the whereabouts of Mrs. Clem Gresham said witness would have referred the person making the inquiry to the plaintiff, who at that time lived on Speck's ranch.

We also overruled appellant's fifth assignment of error, which complains of the judgment against the defendant on the ground that the evidence fails to show negligence. We think the evidence was conflicting on this issue, and the trial court has found in favor of the plaintiff.

Likewise, we overrule the sixth assignment of error, which complains of the finding as a matter of fact by the trial court that the agent at Burkburnett and the agent at Stephenville were guilty of negligence.

It is the judgment of this court that the judgment below should be reversed, and the cause remanded, unless within 20 days from this date the appellee shall file her remittitur in this court of $750, whereupon the judgment will be affirmed.