## ASTIN v. MOSTELLER.

(Court of Civil Appeals of Texas. Dallas. Dec. 7, 1912. Rehearing Denied Jan. 4, 1913.)

1. APPEAL AND ERROR (§ 301*)—ASSIGNMENT OF ERRORS—FUNDAMENTAL ERRORS.

Rule 23 of the Courts of Civil Appeals (142 S. W. xii) requires the record to contain an assignment of errors, as required by statute, or the court will not consider any error but one of law apparent upon the record. Rule 24 provides that a ground of error not distinctly set forth in a motion for new trial and assignment of error shall be waived, unless so fundamental that the court would act upon it without assignment of error under rule 23. *Held*, that rule 24 means that the Court of Civil Appeals should not consider an assignment of error, unless the error therein complained of was made the ground of a motion for a new trial and urged in the court below, whether the case was tried by the court with or without a jury, and, if not, that such error should not be considered unless it is so fundamental that the court would act upon it without being assigned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1743, 1753–1755; Dec. Dig. § 301.*]

2. APPEAL AND ERROR (§ 719*)—ASSIGNMENTS OF ERROR—FUNDAMENTAL ERRORS.

If the reasons assigned in special exceptions to an answer, if well founded, would have justified the sustaining of a general demurrer, rulings of the court thereon were fundamental and could be considered by the Court of Civil Appeals without assignment of error under rule 24, relating to assignments of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. § 719.*]

3. BILLS AND NOTES (§ 534*) — ATTORNEY'S FEE—ESTOPPEL TO CLAIM.

Where a holder of a note impliedly agrees to negotiate with the payee and requests him to furnish information in regard to a claim of shortage in land for which the note was given, he does not waive his right to attorney's fees specified therein and is not estopped to claim the same without notice that the negotiations are closed and demand for payment, where no bad faith, fraud, or mistake was alleged.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1946, 1947; Dec. Dig. § 534.*]

4. BILLS AND NOTES (§ 139*)—EXTENSIONS—CONSIDERATION.

An implied agreement to forbear suit on a note, for a time indefinite and uncertain, while the payee should procure information as to a claim of shortage in land for which the note was given, was no defense in an action for attorney's fees specified therein, since the agreement lacked consideration.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 340–354; Dec. Dig. § 139.*]

Appeal from District Court, Hunt County; R. L. Porter, Judge.

Action by J. O. Mosteller against J. P. Astin. Judgment for plaintiff, and defendant appeals. Affirmed.

Looney, Clark & Leddy, of Greenville, for appellant. Thompson & Thompson, of Greenville, for appellee.

TALBOT, J. This is the third appeal of this case. See Mosteller v. Astin (Cr. App.) 129 S. W. 1136, and Astin v. Mosteller, 144 S. W. 701. The suit was instituted by the appellee, Mosteller, September 3, 1908, against the appellant on a promissory note for $1,200, bearing interest from its date at the rate of 8 per cent. per annum. The note is dated August 22, 1907, was due August 22, 1908, and provides that, if placed in the hands of attorneys or collected by suit, the maker will pay 10 per cent. of the amount thereof as attorney's fees. The note was given as a part of the consideration for a tract of land sold by appellee to appellant, and a vendor's lien was reserved in the deed of conveyance to secure the payment of said note. Plaintiff alleged that he had contracted with attorneys to bring this suit; that he had agreed to pay them, as compensation, 10 per cent. of the principal and interest of the note sued on, and prayed for judgment for his debt, interest, attorney's fees, and a foreclosure of the lien on the land. When the case was before this court on the first appeal, the defendant's special plea was, in

substance, "that the note sued upon was given in part payment for the tract of land described in plaintiff's petition; that the consideration for said land was based upon the acreage thereof to the extent of 160 acres; that, in contracting to purchase said land and in purchasing same, the defendant was to pay at the rate of $15 per acre to the extent of 160 acres; that the tract of land conveyed does not contain 160 acres, but only 155 acres, but, if he is mistaken in this, then the plaintiff did not have possession of five acres on the west part of said tract, had never had possession of same, and he never placed defendant in possession of same and it is adversely held by another under a superior title; that at the time he purchased said land he did not know of such shortage; and that to the extent of same the consideration for the note sued on has failed, and plaintiff should be required either to allow a credit for the amount of such shortage, or execution should be delayed until he places defendant in possession of the same."

By an amended answer filed March 6, 1912, and subsequent to reversals on former appeals, defendant, after a general demurrer and general denial, pleaded as follows: "Specially answering, defendant says that he dismisses all claim in this suit for an offset or counterclaim amounting to $75 or otherwise on account of shortage in acreage of land pleaded in this case and says that he will no longer prosecute the same in this case. Defendant avers that the note sued on was given in part payment for the tract of land described in plaintiff's petition; that the consideration for said land was based upon the acreage thereof to the extent of 160 acres; that, in contracting to purchase said land and in purchasing the same, the defendant was to pay at the rate of $15 per acre to the extent of 160 acres; that the amount he paid and contracted to pay was for 160 acres at $15 per acre; that the tract of land mentioned did not and does not contain 160 acres, but, on the contrary, only 155 acres; that each party, plaintiff and defendant, understood, supposed, and were under the impression that the tract of land actually contained 160 acres and traded on that basis, but as a matter of fact they were each mistaken, and the trade and deed were made under mutual mistake of fact on the part of each party thereto, in that the deed was drawn as to contain calls set out in plaintiff's petition sufficient to cover 160 acres, while as a matter of fact there are but 155 acres in the tract, and the calls in the deed lap over on lands belonging to another, to wit, a man named Spicer, to the extent of a five-acre strip on the west end of the tract extending across from one side to the other, said strip being 15 varas wide and 1,900 varas long, which said strip was no part

of the survey out of which the land in question came and never belonged to plaintiff.

"He further alleges that, if he is mistaken in the foregoing, then the plaintiff did not have possession of five acres on the west part of said tract, had never had possession of same, and that he never placed defendant in possession of the same, and it is adversely held by another, to wit, a German named Spicer, under a superior title by limitation for more than ten years; that when the land was bought and the deed made neither party knew this fact under the mistaken impression that the west line called for therein was 15 varas east of where the true line is; that at the time he purchased said land he did not know of such shortage; that in this deed, as a matter of fact, plaintiff represented to the defendant that said tract of land contained 160 acres or more; that the deed was accepted, and the trade made with the understanding on the part of both parties that the tract of land contained 160 acres; that, when said note became due, defendant notified plaintiff that he was ready to pay said note, but desired to have the matter of the shortage in said land adjusted and allowed; that pending negotiations looking to such settlement, and without any notice whatever to the defendant, and in order to punish defendant for not paying more than was due, and to put him to as much expense as possible, and thereby compel him to submit to an unjust demand or pay double the sum in dispute, and for these reasons alone, and not for reasons of fairness and good faith, plaintiff placed said notes in the hands of attorneys for collection, rushed into court with this suit, and now claims that he contracted with said attorneys to pay them 10 per cent. on the entire amount of said note, when in truth and in fact he made no such contract and there was not but $75 of said note in dispute; that he brought this suit without giving defendant a chance to waive his claim rather than pay double that sum without any notice that he intended to do so; that the amount he now claims to have promised to pay said attorneys is, under the circumstances, grossly excessive, wholly unnecessary, and was an act of bad faith as a matter of law; that the defendant had offered to put the amount of money in controversy in bank to await an adjustment of the shortage, and plaintiff had impliedly consented thereto, had called for additional information looking to this end, and the same had been furnished; that this suit was filed without any notice and pending negotiations looking to such settlement, and by such conduct on the part of the plaintiff the defendant was led to believe, and did believe, that he would be given an opportunity to establish his claim of shortage without being required to pay attorney's fees on the note; and that such conduct was calculated to lead an ordinarily prudent person to believe, and did lead defendant to believe, such fact, or he was led to believe, by the plaintiff's conduct in calling for further information in regard to such shortage, that the plaintiff would continue to negotiate with the defendant in regard thereto, without claiming attorney's fees on said note, until an agreement was reached, or at least not require defendant to pay attorney's fees on said note until plaintiff had notified him that he would permit no further negotiations in regard to said shortage and informed defendant that he demanded the payment of said note.

"Defendant says that, if plaintiff had informed him that no further negotiations would be permitted in regard to said shortage, then defendant would have paid plaintiff the amount of said note, principal, and interest, and have thus avoided the necessity of said note being placed in the hands of an attorney for collection; that the defendant has at all times been ready, able, and willing to pay what he really owes the plaintiff; that plaintiff is not entitled to recover any attorney's fees on said note, and the defendant here now tenders in court the amount of said note, with principal and interest, without any attorney's fees, and prays that plaintiff have judgment for said amount and that the defendant be discharged with his cost."

Plaintiff, on March 8, 1912, filed a supplemental petition in which he excepted to the foregoing answer of the defendant, urging, in substance: (1) That the portion of said answer alleging a shortage in the land, after all claim for such shortage had been dismissed, was immaterial and irrelevant, and would tend to confuse and mislead the jury. (2) That said special answer admitted that when said note was placed in the hands of attorneys for collection that it was past due, that no part of the same had been paid, and no legal excuse for such failure to pay was shown by said answer. (3) That there was no allegation of any act of fraud, accident, or mistake in the execution of said note, in the making of the contract with appellee's attorneys, or in the bringing of the suit, such as would be sufficient to relieve appellant from his contract to pay attorney's fee, and there was no allegation that the amount of attorney's fees provided in said note was either unreasonable or unconscionable. (4) That said plea contained no allegation of any direct or specific agreement between appellant and appellee for the extension of the time of payment of said note, or of forbearance to sue, and no consideration was alleged in support of any implied agreement for such extension.

[1] The assignments of error are four in number, and complain solely of the court's action in sustaining plaintiff's exceptions to defendant's special answer and rendering judgment for the attorney's fees claimed.

The appellee objects to a consideration of the assignments because the record fails to show that the appellant, as required by rule 24 for the government of the Courts of Civil Appeals (142 S. W. xii), as recently amended by the Supreme Court, filed in the trial court a motion for a new trial calling that court's attention to the errors assigned. Rule 23 is to the effect that the record should contain an assignment of errors, as required by statute, and that if it does not the court will not consider any error but one of law that may be apparent upon the record. Rule 24, above referred to, reads as follows: "The assignment of error must distinctly specify the grounds of error relied on and distinctly set forth in the motion for a new trial in the cause, and a ground of error not distinctly set forth in a motion for a new trial in the cause and not distinctly specified in reference to that which is shown in the record, or not specified at all, shall be considered as waived, unless it be so fundamental that the court would act upon it without an assignment of error as mentioned in rule 23." This rule had become effective more than two months before the appeal in this case was perfected, and, as we construe it, means that the Courts of Civil Appeals should not consider an assignment of error unless the error therein complained of was made the ground of a motion for a new trial filed and urged in the court below, whether the case was tried by the court with or without a jury, and such error should not be considered unless it is so fundamental that the court would act upon it without being assigned.

[2] We regard the exceptions of the plaintiff to the special answer of the defendant as nothing more, in effect, than a general demurrer, and the action of the court in sustaining them equivalent to holding that said answer presented no ground of defense to the attorney's fees sought to be recovered. It seems clear that the reasons assigned in the special exceptions for the insufficiency of the answer, if well founded, would have justified the sustaining of a general demurrer. If correct in the views expressed as to the nature of the plaintiff's exception to defendant's answer, then the action of the court called in question by appellant should be reviewed. It is settled by the decisions of this state that the overruling of a general demurrer going to the foundation of the action, and "a judgment sustaining a general demurrer, which is a declaration that no cause of action exists, would be fundamental," and the practice of the appellate courts has been to "consider, without assignment, rulings of the trial court" which are "fundamental in character," or which determine "a question upon which the very right of the case depends." Hall v. Johnson, 40 S. W. 47; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518. We are of the opinion that the rule referred to is applicable in this case. This brings us to a consideration of the ruling complained of as error.

[3] The contention of appellant is that: "Where a promissory note becomes due, and the payee notifies the holder of said note that he is ready and willing to pay the same according to its tenor and effect, but that he desires to adjust a matter of shortage on the land which has been sold him by the holder of the note, and where the holder of the note impliedly agrees to negotiate with the payee of said note and requests him to furnish information in regard to such shortage, thereby causing the same to be furnished, the payor of said note waives his right to claim attorney's fees and is estopped to claim the same, without notifying the payee of said note that he will permit no further negotiations thereafter and demands payment of the note; that it being alleged in appellant's answer that appellee's act in calling for information in regard to shortage in the land sold by him to appellant was such as to cause an ordinarily prudent person to believe that the appellee would permit negotiations in regard to such shortage, and that the same did lead the defendant to so believe and thereby prevented him from paying the note, principal, and interest when due, appellee waived his right and was estopped to insist upon attorney's fees upon said note without notifying appellant that he desired to end the negotiations in regard thereto, and such facts constituted a complete defense to appellee's claim for attorney's fees." We do not think the contention should be sustained. On the contrary, we are of opinion the court properly sustained the exceptions to that portion of the defendant's answer in question. The answer contained no allegation of fraud, accident, or mistake in the execution of the contract for attorney's fees, or in the making of the contract between appellee and his attorneys for enforcing the collection of the same. Nor do we think its allegations show any such bad faith in bringing this suit as warrants a forfeiture of the appellee's right to the attorney's fees as provided for in the contract. That the note sued on provided for 10 per cent. attorney's fees, in the event it was not paid at maturity and was placed in the hands of an attorney or suit brought thereon for its collection, and that it was past due and unpaid when this suit was instituted, does not appear to be controverted.

The insistence is, as we gather it from the argument, that the answer stricken out showed an implied agreement to extend the time of payment or to forbear suit upon the note to await the result of negotiations alleged to have been pending between the parties concerning an alleged shortage in the number of acres of land for which the note was given, or, if not, appellee's conduct in calling for information in regard to the shortage in the land and in failing to insist upon payment of the note according to its tenor and

effect, thereby inducing appellant to take such a position that he would be injured if appellee should be permitted to repudiate his act, estops him from taking advantage of appellant's failure to pay the note when due, and that in either case the contract for attorney's fees should not be enforced. Neither proposition can, in our opinion, be sustained. The facts alleged in the defendant's answer would not warrant an application of the doctrine of equitable estoppel, and the claim of an implied agreement not to sue, which is perhaps the strongest position assumed by appellant, is, and necessarily must be, predicated in the main upon the allegations that, when appellant notified appellee of his claim for shortage, the latter replied and "called for additional information," which information it is alleged was furnished. There is no allegation that appellee, after the information called for was furnished, by any word or act indicated that he would continue longer to negotiate with appellant touching the shortage in the land, and, without some such indication being given, it seems that the natural inference would be, not that negotiations would be prolonged, but that by appellee's silence they were terminated.

[4] But if it should be conceded that appellant's plea set forth facts showing an implied agreement to forbear suit, yet there appears to be elements lacking essential to its validity as a defense to appellee's claim for attorney's fees. The time of forbearance, according to the allegations, is indefinite and uncertain, depending alone upon the uncertain result of the alleged attempt to adjust the shortage claimed in the land, and it does not appear that the agreement to forbear, or to extend the time of the payment of the note, was supported by a sufficient consideration. It seems to be settled that it is essential to a binding agreement to forbear suit, or to extend the time of payment of a note, that the extension be for some definite period of time, and that it be supported by a consideration. Caskey v. Douglas, 95 S. W. 562; Gibson v. Irby, 17 Tex. 173; Benson v. Phipps, 87 Tex. 580, 29 S. W. 1061, 47 Am. St. Rep. 128; Abstract Co. v. Baker, 87 Tex. 582, 29 S. W. 646, 30 S. W. 430. That appellant may have been put to some trouble in collecting and furnishing to appellee information in regard to the shortage of the land could not, we believe, under the allegations of the answer, be considered a sufficient consideration for an extension of the time of payment of the note, until negotiations in regard to the shortage were terminated. There is no allegation that appellant was in fact put to trouble or incurred any expense whatever in securing and furnishing the information to appellee in regard to the shortage of the land, and we do not think the court could judicially know that trouble and expense was necessarily incurred in the matter. That appellant's special answer presented no defense to appellee's claim for attorney's fees is practically affirmed by the decision of this court and the Court of Civil Appeals for the Sixth District on the former appeals. On the point this court said: "Neither the pleadings nor the proof in this case shows any such fraud or bad faith on the part of the appellant (Mosteller) in making the note sued on, or in making the contract with his attorneys, or in bringing this suit under the circumstances shown, as deprived him of the right to enforce the contract for attorney's fee." And the court sitting at Texarkana said: "That portion of the answer which set up a defense against the attorney's fee claimed in the suit was, we think, insufficient. When the note matured it was the duty of the appellant to pay whatever sum was due thereon. A default upon his part authorized the appellee, as the holder of the note, to place it in the hands of an attorney for collection. This, it seems, was done. The fact that the appellee may have exercised some undue haste, or might have been actuated by a disposition to harass the appellant, is no defense, when the facts alleged in the pleadings show that the note was not paid by the appellant at maturity, and that the appellee sought to recover only such fees for the services of an attorney as were stipulated in the contract between the parties."

We think the judgment of the court below should, in all things, be affirmed, and it is, accordingly, so ordered.