**HOUSTON BELT & TERMINAL RY. CO. v. DAIDONE.**

No. 9826.

Court of Civil Appeals of Texas. Galveston.
March 7, 1933.

Andrews, Streetman, Logue & Mobley, W. McIver Streetman, and James E. Kilday, all of Houston, for appellant.

Campbell, Myer & Myer, of Houston, for appellee.

LANE, Justice.

This suit was brought by Frank Daidone, Sr., against the Houston Belt & Terminal Railway Company, hereinafter, for convenience, referred to as the railway company, to recover damages to lot 5 in block 530 on the south side of Buffalo bayou, Houston, Tex., which fronts 100 feet on Dallas avenue, a public street in the city of Houston, and 50 feet on Velasco street, also such public street.

He also seeks to recover damages against the railway company which he alleges he suffered to his business that he was conducting in a house situated on said lot, and other damages not necessary to be here mentioned.

The city of Houston was also made a party defendant, but, since judgment was rendered in its favor and no reversal of such judgment is sought by this court, it becomes unnecessary to further mention it in this opinion except for the purpose of explaining the allegations of the plaintiff's petition.

Plaintiff alleges:

That about the 1st of June, 1927, the defendant, Houston Belt & Terminal Railway Company, by virtue of a permit or franchise theretofore granted to it by the city of Houston so to do, did illegally and without authority of law, and without plaintiff's consent, place in front of plaintiff's premises on Dallas street a railroad track, and, in placing said railroad track, and in connection therewith, the defendant constructed a roadbed upon which its ties and rails were placed, and in connection with the construction of said roadbed the defendant built a dump of earth and concrete, and thereby defendant elevated that portion of the center of Dallas street, in front of his property, about five feet above the level of the ground of the street on either side of said dump and railroad track at said point, and is now maintaining and operating its engines, cars, and trains along said track in said street. That the defendant railway, in addition to putting its railroad track on the said elevation so placed on Dallas street, as above alleged, has filled in a good portion of Dallas street with its said dump and roadbed so that that portion of said street in front of plaintiff's property is now five feet or more above the level of the ground of said street in front of plaintiff's property on either side of said dump, roadway, and fill. That the placing of said dump and railroad track in said street in front of plaintiff's property has largely, if not completely, destroyed the use and access of said street as a means of ingress and egress to and from plaintiff's property which plaintiff had theretofore had to his property, and has cut off and prevented the use of said street in front of plaintiff's premises by reason of the obstructions placed thereon by said defendant.

That, after and by reason of the construction by the defendant company of said railroad track and dump, plaintiff's property became greatly damaged and depreciated in value, and became undesirable for residence purposes for which it was used and adapted, and its residence value was practically destroyed. That it also, by reason of the building of said dump and placing thereon said railroad track, became undesirable for plaintiff's business purpose for which it was used and adapted, and had its business value practically destroyed.

That, by reason of and after the obstruction of and interference with his ingress and egress to and from said property and the raising of that portion of Dallas street as hereinabove alleged, the value of plaintiff's property became depreciated in the sum of $10,000, and plaintiff has sustained, as a direct and proximate result of defendant's said acts and conduct, damage by reason of said construction by said defendant company, as hereinabove alleged, in the sum of said $10,000, to recover which sum, together with interest from June 1, 1927, at the rate of 6 per cent. per annum, this suit is brought.

That, in order for him to use said property for the purpose that he has been heretofore using it, it will be necessary for him to remove his home therefrom and fill the said ground to the level of said railroad track and dump on Dallas street, and fill in all of Dallas street outside of defendant's railroad track and dump in front of plaintiff's property, so that it would be made level and usa-

ble as a street, and in that way only plaintiff would have easy ingress and egress to and from his said property. That ·it would cost $7,500 to remove plaintiff's improvements from his said lots and fill the same and place the said improvements back on said lots as they stood prior to the time said defendants obstructed said street. Therefore plaintiff says that each of the said defendants, because of the construction of said railroad track and dump, has damaged plaintiff and his property not less than $7,500, in addition to the depreciation in the value of his property.

That on the 1st day of June, 1927, and for several years prior thereto, he conducted a retail grocery business on lot 5 in said block 530, and had a profitable, prosperous, and thriving business in which he was making large sums of money each month as profits which he realized thereon, and by reason of which he was able to maintain and support his family. That a large part of plaintiff's customers who traded with him came to his place of business in automobiles and vehicles, and the purchases of said customers att his said store made up a large part of plaintiff's profits in carrying on said business. That, prior to the time when defendant constructed said railroad track on Dallas street in front of plaintiff's property, his property was level with the street and there was easy access of ingress and egress to and from his said place of business by his customers and by himself, but that since the construction of such railroad dump and track it is impossible for his customers to approach his property and place of business in automobiles or other vehicles, with the result that his customers cannot conveniently or safely come to his place of business or make purchases from him, and they have gone to other stores and places of business and made their purchases from them, and thereby such customers were diverted from plaintiff's place of business, and as a direct and proximate result thereof plaintiff has lost profits in his business in the amount of $7,500 and he has been damaged in his business because of the acts of the defendants hereinbefore complained of in that amount, together with interest thereon from June 1, 1927.

He prayed for judgment in the sum of $25,-000.

Defendant railway company answered by general demurrer and by general denial.

The case was tried before a jury upon special issues, in answer to which the jury found: That the plaintiff's land and improvements was proximately caused to be reduced in its fair market value immediately after the construction, and by reason thereof, by the railway company of the roadbed and track on Dallas avenue, from what it had been immediately before such construction. That the reasonable cash market value of

such property immediately prior to the construction and maintenance of defendant's roadbed and track on Dallas avenue for any use to which it was adapted was $9,500. That the reasonable cash market value of such property immediately after the construction and maintenance of the roadbed and track on Dallas avenue for any use to which it was adapted was $7,500. That at the time the roadbed and track were constructed on Dallas avenue the plaintiff had owned and conducted on his said lot a profitable mercantile business. That the construction of such railroad roadbed and track on and in Dallas avenue in front of plaintiff's lot had not injured or damaged plaintiff's mercantile business by causing it to lessen in its fair market value immediately after such construction from what it was immediately before such construction.

Upon such answers and the evidence, the court rendered judgment in favor of the plaintiff against the defendant for the sum of $2,000. From such judgment the Houston Belt & Terminal Railway Company has appealed.

Appellant has no formal assignments of error in the record, nor in its brief. The only assignments are those set out in its amended motion for new trial, copied in the transcript. None of such assignments is literally or substantially or in any manner presented in appellant's brief. In none of the assignments in the motion for new trial, which appear only in the transcript, is there any complaint made of the admission or rejection of any testimony of any witness, or of any other evidence. Each and all of the assignments are confined to objections to the several paragraphs of the charge and special issues submitted thereby and the failure of the court to submit other supposable issues, though no request was made therefor by appellant so far as shown by the record.

■ Under the decisions of our appellate courts, motions for new trials become assignments of error, but this does not dispense with the necessity of copying into the brief such portions of the motion for a new trial as are relied upon in the appellate court as assignments of errors. Hayes v. Groesbeck (Tex. Civ. App.) 146 S. W. 327, 328; Hearn v. Harless (Tex. Civ. App.) 154 S. W. 613; Overton v. Colored K. of P. (Tex. Civ. App.) 163 S. W. 1053; Smith v. Bogle (Tex. Civ. App.) 165 S. W. 35; Norton v. Lea (Tex. Civ. App.) 170 S. W. 267.

■ To entitle an assignment to consideration, it must distinctly specify the grounds of error relied· upon. St. Louis S. W. Ry. Co. v. Hall (Tex. Civ. App.) 106 ·S. W. 194, 196; Rule 24 for Courts of Civil Appeals; Rule 25 for Courts of Civil Appeals.

Where it does not appear in assignments, as in this case, whether the court erred in

its rulings as to the admission or refusal of evidence, in charges given or refused, or in some other particular pointed out, they are insufficient to be considered. Southern Nat'l Ins. Co. v. Wood, 63 Tex. Civ. App. 319, 133 S. W. 286, 287.

■ Since there was no assignment filed in the trial court complaining of the admission or rejection of evidence, complaints of such matters for the first time in .this court are not entitled to a consideration, as they present no fundamental error. Astin v. Mosteller (Tex. Civ. App.) 152 S. W. 495, 498.

■ Assignments of error should not be considered unless they are literally or substantially copied in the brief. Evants v. Erdman (Tex. Civ. App.) 153 S. W. 929, 931; Galveston, H. & S. A. R. Co. v. Stevens (Tex. Civ. App.) 94 S. W. 395; Holton v. Galveston, etc.. Ry. Co., 31 Tex. Civ. App. 128, 71 S. W. 408; Hulme v. Levis-Zuloski Mercantile Co. (Tex. Civ. App.) 149 S. W. 781.

For the reasons pointed out, this court is not called upon to consider any of the assignments appearing in the amended motion for new trial, none of which has been copied in appellant's brief either literally or substantially.

If, however, we are in error in the conclusion above expressed and we are called upon to consider appellant's propositions set out in its brief, we hold that none of them present reversible error.

■■ On and before the 1st day of June, 1927, appellee was the owner of the lot and improvements thereon hereinbefore described. At and before such date he was conducting on such premises a profitable mercantile business. It is shown that at such time the fair cash market value of such property and premises was $9,500. It was shown that on or about the 1st day of June, 1927, appellant railroad company began the construction of a railroad bed and track in and along the center of Dallas avenue in the city of Houston by permission of said city; that a part of such railroad bed and track was constructed in said avenue directly in front of appellee's property, and as constructed it was one to three feet above the level of said avenue, which left appellee's property in a hole. At such time the property was the family homestead and the business homestead of appellee. The jury found upon sufficient probative evidence that the fair cash market value of appellee's property immediately after the construction of said railroad track and bed was $7,500, or $2,000 less than it was worth immediately before such construction.

Some years after such construction was completed, appellee borrowed $3,000 from the Bankers' Mortgage Company, which was secured by a lien on the property in question. He later paid on such loan the sum of $1,500

and he still owed on such loan $1,500 at the time of the trial of this cause.

Appellee procured a fire insurance policy on his house on the lot in question long after the construction of the railroad track and bed. The house was thereafter destroyed by fire, and the company paid him the amount of the insurance due under the terms of the policy.

By appellant's proposition No. 1 it is insisted that the court committed reversible error in failing to limit the plaintiff's recovery, by a proper charge, to the depreciation in the value of plaintiff's interest to the exclusion of the depreciation in the value of the interest of the Bankers' Mortgage Company arising by reason of the lien it had on the property.

It is clearly apparent from what we have said that the cause of action asserted by appellee had accrued before the Bankers' Mortgage Company obtained its lien. It took its lien on the property just as it stood at the time such lien was given; therefore it had no interest in said cause of action. If, however, we are in error in the conclusion just expressed, we are still of opinion the court was not called upon to give the charge mentioned by appellant. The mortgage company had no interest in the property other than to secure the payment of its loan made to appellee. If appellant thought the mortgage company had any interest in the cause of action, it should have made the mortgagee a party to the suit. In such event it was its plain duty to do so. It cannot now take advantage of its own failure of duty. Since the mortgagee was not made a party to' the suit, had appellee's right of recovery been limited as suggested should have been done by appellant, there would be no party in a position to recover, as against appellant, the remaining part of any damage done to appellee's property by reason of appellant's wrongful act. The mortgagee was not bound to foreclose its lien securing its debt for the purpose of collecting such debt. It could have resorted to other means for such collection, if it so chose. So if the right of recovery by appellee had been limited as suggested, and judgment accordingly rendered, and should the mortgagee, as it had the right to do, collect its debt from appellee without resort to its lien, appellant could and would escape the necessity of making payment of a part of the damage found by the jury to have been suffered by appellee by reason of the construction and maintenance of the railroad track and bed, and under such circumstances appellee would be the loser of such part of the damage as might have been found not to be recoverable by him. There is no merit in appellant's proposition.

■■ By appellant's proposition No. 2, it contends that, after the construction of the track and roadbed complained of by appellee,

and before the trial of this suit, the buildings on appellee's land were destroyed by fire and he collected money from an insurance company which had issued to him a policy covering such buildings, and therefore appellant was entitled to a charge of the court limiting the damage to the land without the improvements, which charge was not given to the jury.

No request was made for such charge. We overrule such contention. As already stated, the construction of the railroad track and bed was in June, 1927, and had been continuously maintained from that date to the date of the trial of this suit. The insurance policy referred to was issued to appellee after he had suffered the damages to his land and improvements thereon. There was ample evidence to support the findings of the jury that the fair cash market value of appellee's property immediately before the construction of the railroad track and bed was $9,500, and that its fair cash market value immediately after such construction was only $7,500, a depreciation of $2,000. That appellee, after he suffered his damage by reason of appellant's act, insured his house to protect him against further loss in the event his house was destroyed by fire was no concern of appellant. It is true that appellee sued for $7,500 as damage to his business by reason of the construction of such track and bed, but the jury found against him on that issue, and he was awarded only such injury and damage as he suffered to his land and improvements thereon by reason of the construction of said track and bed or dump.

■■ The liability of appellant to appellee for damage to his property caused by the construction of its roadbed on a dump in front of appellee's lot upon which there was at the time of the completion of said roadbed and track, and for several months thereafter, the store building and residence of appellee, was fixed as of the date when the railroad track and bed in front of appellee's property was finished, and whether the buildings then on said lot were afterwards destroyed by fire or not is of no consequence in determining the damage due appellee by appellant. The rule of damage as it respects real estate is the difference between the value of the premises immediately before the injury and such value immediately after injury. Trinity & Sabine Ry. v. Schofield, 72 Tex. 496, 10 S. W. 575; Texas Trunk R. R. Co. v. Elam, 1 White & W. Civ. Cas. Ct. App. page 201, § 445, and cases there cited; Haney v. G., C. & S. F. Ry. Co., 3 Willson, Civ. Cas. Ct. App. pages 336, 338, § 279.

What we have said in disposing of appellant's proposition No. 2 also disposes of proposition No. 3 adversely to appellant.

■ By appellant's proposition No. 4 it is contended that it was reversible error for the court to omit from its charge an instruction to the effect that, in answering issues as to the value of the realty before and after the building of the railroad dump, the jury should not consider any injuries or benefits sustained by the plaintiff in common with the community generally as a result of the construction of said railroad dump.

There is no merit in such contention. The court instructed the jury as follows: "In connection with the three preceding issues you are charged that in determining the damage, if any, to plaintiff's property on account of the construction of said railroad roadbed and track you will take into consideration as a set-off against said damage, if any, any special benefit, if any, which you may believe from the evidence accrued to said property by reason of the construction of said railroad roadbed and track in front of his property, not enjoyed by the community in general."

We think such instruction, which related to special issues 1, 2, and 3, submitted to the jury, was sufficient instruction on the issues mentioned in appellant's proposition No. 4, especially in the absence of any special request by appellant for other or further instructions relative to the matter covered by the court's charge.

■ As already stated, appellee sued to recover $7,500 damage to his business and loss of profits by reason of the act of appellant complained of, independent of the alleged injury to his land and improvements. Appellant offered evidence to show, and which did show, that, after the construction of the track and bed or dump complained of by appellee, one Frank Daidone, Jr., a son of appellee, engaged in the unlawful sale of intoxicating liquors on appellee's premises in violation of law. Appellant contended, as it does now, that such evidence was sufficient to support a finding by the jury that appellee, Frank Daidone, Sr., was interested in such unlawful sales. So contending, appellant requested the court to give to the jury its special charge as follows: "You are instructed that in considering the issues in this case relating to the value of the plaintiff's land and improvements and relating to the value of his business, you will not take into consideration any value which such land, improvements, or business may have had, may now have, or may have in the future, as a result of the conduct of any illegal business on Lot Five (5) in Block Five Hundred Thirty (530)."

The court refused to submit such charge to the jury, and of such refusal appellant complains as shown by its proposition No. 5.

We overrule such complaint. We agree with the contention of counsel for appellee that there was not sufficient probative evidence to show that appellee had anything to do with the unlawful sale of intoxicating liquors as contended by appellant. If, however,

we are in error in the conclusion next above expressed, we are nevertheless of opinion that the refusal of the requested charge does not constitute reversible error, in that it was called for, if at all, as affecting only appellee's suit for loss of profits in his business, and, as the jury found against him on such issue, the refusal of the charge was harmless.

■ By appellant's proposition No. 6 it contends that, as it was rumored before appellant constructed its track and roadbed in Dallas avenue that its railroad was to be constructed to create an industrial development in the vicinity of appellee's property, and that it was shown that the value of the property generally in such vicinity materially increased in value by reason of such rumor, the court committed reversible error in not in its charge giving appellant the benefit of any increase in value due to such foreknowledge or rumor.

It is sufficient to say that the proposition presents no error. It is well settled that increases in the value of property by reason of the construction of a railroad in the streets of a city, enjoyed generally by the community and not specially enjoyed by a complainant of the manner of such construction resulting in special injury to his property, cannot be considered as a set-off against any special damages suffered by such complainant.

■ There is no merit in appellant's contention made by its proposition No. 7, to the effect that by the submission of special issues 1, 2, and 3, inquiring (1) as to whether or not the acts of appellant caused appellee's real estate to decrease in value, (2) as to what the value was immediately before such acts, and (3) as to what was such value immediately after such acts, the court committed reversible error, in that by such submissions it authorized the recovery of double damages.

It is apparent upon the face of such proposition that it is not entitled to any serious consideration.

■ Appellant's propositions 8 to 14, inclusive, complain of either the admission of evidence received or the rejection of evidence offered.

As we have already stated, there were no formal assignments filed in the trial court and of course no such assignments appear in appellant's brief. While it is true that appellant filed his motion for new trial in which it assigned many supposable errors, none of them were copied into its brief, and are therefore not entitled to consideration; however, we have carefully examined such assignments, fifty-one in number, which cover twenty-three pages of the voluminous transcript, none of which complains of either the admission or rejection of evidence. Each and all of them are either objections to the charge of the court, or the refusal of the court to give other instructions.

It is apparent that the assignments which appellant has attempted to set out in its propositions Nos. 8 to 14, inclusive, are not based upon the assignments in its motion for a new trial. It cannot be successfully contended that any assignment in appellant's motion complains of the action of the court in the admission or rejection of any evidence.

■ Propositions assigning error appearing in the brief but not in the record as to matters which should have been called to the attention of the court in the motion for new trial cannot be considered. Dees v. Crane (Tex. Civ. App.) 175 S. W. 468.

In Houston & Texas Central Railway Company v. Thompson (Tex. Civ. App.) 138 S. W. 1066, at page 1068, last paragraph, it is said: "It appears from the transcript that appellant assigned errors upon the admission of certain testimony of Dr. Morrison, and upon the charge of the court on the measure of damages, but these assignments are not copied in appellant's brief, and therefore under the rules will be regarded as waived."

For the reasons herein expressed, the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

In our original opinion in this case we refused to consider propositions 8 to 14, inclusive, found in appellant's brief, some of which complain of the admission of evidence and others of the rejection of evidence offered by appellant. We held that, as appellant had not in its motion for new trial filed in the trial court, nor by any form of assignment of error filed either in this or the trial court, complained of the admission or rejection of evidence, we should not be required to consider the propositions found in appellant's brief purporting to assign errors in the admission and rejection of evidence by the trial court.

Appellant has filed a book of 182 pages of unusual size in this court, constituting its motion for new trial, by which it complains, among other things, of our refusal to consider propositions 8 to 14, inclusive, found in appellant's brief.

■ We were of opinion when the original opinion was prepared, and are still of opinion that when a losing litigant asks the trial court to grant him a new trial upon specified supposed errors made in the trial of the case, all acts of the trial court complained of during the trial but not complained of in the motion for new trial should be considered as waived. The purpose of requiring the filing of a motion for new trial in cases tried before a jury, as a prerequisite to appeal, is to present to the trial judge the assignments upon which the party relies for the setting aside of the judgment against him and the granting of a new trial. Complaints made

of any act of the court in the conduct of the trial not presented in the motion for new trial should, in our opinion, be considered as waived. In this case, appellant filed its motion for new trial in the trial court which, when copied in type into the transcript, covers twenty-four pages, and which contains fifty assigned reasons why the trial court, should set aside its judgment and grant appellant a new trial. In other words, in such motion appellant has presented to the trial judge fifty supposed errors upon which it relied for a setting aside of the trial court's judgment, not one of which asserts that the court erred in the admission of evidence or the rejection of evidence offered by it.

We are of opinion that under such circumstances this court should not be required to correct an error, if any, which the trial court might have corrected, and probably would have corrected had it been asked to do so, by motion for rehearing. We think it should be held that appellant waived his exceptions taken relative to the admission and rejection of evidence. We think the rule stated in the case of Bustamante v. Haynes (Tex. Civ. App.) 55 S.W.(2d) 137, at page 141, where it is said: "We will close this digression by expressing the conviction that article 1757 [Revised Statutes], as amended, in no manner lessens the obligation of the litigant to apprise the trial court of the complaints and contentions he expects to urge on appeal. The statutes relating to and requiring motions for new trial below and the preservation of the record thereon are not affected by article 1757, and are still in full force"— should be the rule to be applied in the present case.

In Commercial Casualty Ins. Co. v. Hamrick, 60 S.W.(2d) 247, 250, by the Dallas court, it is said: ·

"In assignment No. 11, defendant complains of the action of the court in refusing to direct a verdict in its favor, and in assignment No. 12, complains of the action of the court in admitting in evidence, over its objection, testimony of plaintiff detailing the conversation between him and Lankford at the time the application for the insurance was being taken.

"These assignments cannot be considered, because urged for the first time on appeal. Occurrences during the progress of the trial (except fundamental errors), unless specified in the motion for new trial, will be considered waived (see subdivision 3, art. 2232, R. S. 1925), and cannot be considered, although embodied in the brief filed on appeal. This provision of article 2232 was not changed by the amendment to article 1844, chapter 75, page 117, Acts of 1931 (Vernon's Ann. Civ. St. art. 1844)."

See, also, Fischer v. Fischer (Tex. Civ.

App.) 57 S.W.(2d) 314, decided February 3, 1933; Chicago, R. I. & P. Ry. Co. v. Greer, an Arkansas case, 58 S.W.(2d) 424; and Whitehead v. Bank, a Missouri case, 52 S.W. (2d) 833; Metropolitan Cas. Ins. Co. of N. Y. v. McCarvell (Tex. Civ. App.) 60 S.W.(2d) 1061.

However, since the Commission of Appeals in the case of Phillips Petroleum Co. v. Booles, 276 S. W. 667, have held to a view contrary to that expressed by us, we have examined and considered appellant's propositions Nos. 8 to 14, inclusive, each of which is either complaint of the admission or rejection of evidence by the trial court of which no mention was made in the motion for new trial presented to the trial court, or by any assignments of error.

After a careful examination and consideration of such propositions, we have reached the conclusion that, if any error is shown, it is not such as would require or authorize a reversal of the judgment.

The motion for rehearing is refused.

Refused.