## ROBY v. HAWTHORNE.

### No. 11485.

Court of Civil Appeals of Texas. Dallas. Nov. 3, 1934.

Rehearing Denied Dec. 15, 1934.

White & Yarborough, of Dallas, for appellant.

Muse & Muse, of Dallas, for appellee.

JONES, Chief Justice.

Charles Roby, appellant, instituted this suit in a district court of Dallas county, to recover damages from R. C. Hawthorne, appellee, for diverting surface water from its natural flow, and causing same to flow across appellant's land. From an adverse judgment, based on the findings of a jury, appellant has prosecuted this appeal. The following are the necessary facts:

What is known as the Combine road, a public thoroughfare, extends north and south through the western edge of the town of Seagoville, in Dallas county. Appellant's land, consisting of 76.8 acres, borders on this road for about ½ mile, the west boundary line of the road being the east boundary line of appellant's land. Appellee owns a larger tract of land, bordering on said road, his

west boundary line being the east boundary line of the road, and the land lies opposite appellant's land. According to the lay of the land, the natural flow of surface water that overflows on appellant's land is across this road and on to and across appellee's land. It is alleged by appellant, and proof was offered tending to sustain such allegations, that by a system of terraces and by filling up a ditch along the west side of the Combine road, appellee diverted this natural flow of the surface water and caused it to overflow appellant's land, and permanently to damage his land. The petition contains specific allegations as to the character of the injuries to appellant's land and premises—his house, yard, garden, orchard, etc.—and alleges that the damages result from permanent injury to his land, decreasing its market value approximately 50 per cent. This damage was alleged to have been caused by the heavy rains of 1929. The amount of the damages were alleged in the petition to be $6,000.

All of those enumerated items of injury to the land that show on their face that they were not for permanent injury to the land were excluded by the court on special exceptions presented by appellee, and no error is assigned on such ruling of the court.

Appellant's petition as to the character of injury alleged to have been occasioned his land, and his allegations, to the effect that the damages were proximately caused by appellee's diversion of the natural flow of the surface water by the series of terraces constructed by appellee, and by the filling up of the ditch on the Combine road, are full and complete, but we do not find it necessary further to refer to such allegations.

Appellee, in his answer, denies the alleged diversion of the flow of the surface waters, denies that the overflow and whatever damages that occurred to appellant's land was due to any act of his, but alleges that there was an unprecedented rainfall in May, 1929, and that such damages that may have been suffered by appellant were occasioned by the unprecedented rainfall, and offered evidence tending to establish such allegations. Appellee's allegations, in the respect above named, are full and complete, but we do not deem it necessary further to state them.

It developed at the trial that appellee's theory of the case was that, as appellant's suit was one for permanent injury to his land, he could not recover damages for any injury to the land that could not be placed in the category of permanent injury. The court adopted this theory of the case, and

submitted the special issues to the jury, based on this theory. Appellant objected to such construction of the law, and its application to his petition, and has duly assigned error on such ruling of the trial court.

The court submitted the case to the jury on special issues; those issues necessary to a decision of this case are as follows: "No. 1: Do you find from a preponderance of the evidence that the land in question of the plaintiff was damaged in May 1929, by the flow of surface water thereon? Answer this question 'yes' or 'no'. Answer, Yes."

Provided there was an affirmative answer to special issue No. 1, the court then required the jury to answer special issue No. 2: "Do you find from a preponderance of the evidence that such damage, if any you have found in answer to Special Issues No. 1, was permanent? Answer this question 'yes' or 'no'. Answer, No."

Special issues Nos. 3, 4, and 5 were submitted, but the jury was directed not to answer in the event of a negative answer to issue No. 2. Such issues, and issue No. 6, are:

"No. 3: Do you find from a preponderance of the evidence that the defendant, R. C. Hawthorne, in May 1929, diverted the flow of the surface water on his farm, from its natural course, so that it flowed across the Combine Road onto plaintiff's land, in question?

"No. 4: Do you find from a preponderance of the evidence that such diverting of the flow of the surface water from its natural course by the defendant, if you have so found in answer to Special Issue No. 3, was negligence, as that term has been hereinbefore defined to you?

"No. 5: Do you find from a preponderance of the evidence that such negligence, if any you have found in answer to Special Issue No. 4, was a proximate cause of the damage, if any, to plaintiff's land in question?

"No. 6: What do you find from a preponderance of the evidence, was the acreage of plaintiff's land permanently so damaged by water diverted from the land of R. C. Hawthorne, in May 1929, if any you have so found? Answer, None."

There are two distinct rules with respect to the right of owners of lower land to obstruct and repel surface waters flowing from that of an owner of upper land. One is known as the civil law rule, and the other as the common-law rule (27 R. C. L., p. 1139, § 71). Under the civil law rule, prevailing in

many of our states, the owner of the upper or dominant estate has a legal and natural easement in the lower estate, to discharge all water flowing or accumulating on his land upon or over the lower land, as in a state of nature, and such natural passage of surface water cannot be diverted or prevented by the owner of the land, to the injury of the owner of the upper land (27 R. C. L., § 72, p. 1140).

The other rule is known as the common-law rule, adopted by the courts of some of the states, and denies the right of easement for the flow of surface water, over the lower land, in favor of the owner of the upper land. Such rule gives to the owner of the lower land the right lawfully to obstruct or hinder the flow of such water thereon, and, in so doing, he may divert from his own lands such flow of water by any reasonable method of obstructing the flow of water and diverting it from his land, provided he exercises due care in doing so.

Prior to the enactment of May 29, 1915, at the First Called Session of the 1915 Legislature (chapter 7), which became article 5011t in the 1918 Supplement to Vernon's Annotated Statutes, the common-law rule prevailed in this state, and, under such rule, appellee, the owner of the lower estate, had the right to terrace his land in such a manner as would prevent the flow of the surface water from appellant's land, provided he exercised due care in constructing his terraces, so as to damage other land no more than was necessary to prevent the flow of the water over appellee's land. After said enactment, this rule was abolished, and the civil law rule, in respect to the flow of surface water, was substantially adopted. Hester v. McAdams (Tex. Civ. App.) 203 S. W. 121; Walenta v. Wolter (Tex. Civ. App.) 186 S. W. 873; Bevers v. Hughes (Tex. Civ. App.) 195 S. W. 651; Jackson v. Knight (Tex. Civ. App.) 268 S. W. 773.

This enactment was omitted by the codifiers in the Revised Statutes of 1925, and hence by the express terms of section 2, final title to the 1925 Statutes, such enactment was repealed. However, the Fortieth Legislature, at its Regular Session in 1927 (chapter 56, § 1), re-enacted this statute, and it became article 7589a, in Vernon's Complete Texas Statutes of 1928 (Vernon's Ann. Civ. St. art. 7589a), and was the existing law in respect to the flow of the surface water at the time the injury to appellant's land is alleged to have been caused. The applicable portion of said statute reads: "That it shall hereafter be unlawful for any person, firm or private corporation to divert the natural flow of the surface waters in this State or to permit a diversion thereof caused by him to continue after the passage of this Act or to impound such waters, or to permit the impounding thereof caused by him to continue after the passage of this Act, in such a manner as to damage the property of another, by the overflow of said water so diverted or impounded, and that in all such cases the injured party shall have remedies, both at law and in equity, including damages occasioned thereby. * * *"

■ Under the express terms of the statute, appellee was forbidden to continue the diversion of surface waters by the terraces he had erected, or to use any other artificial means to divert such water, provided such diversion would cause an overflow on appellee's land, and thereby damage his property. This statute rendered appellee liable to appellant for any damages he may have suffered to his land, his growing crops, or other appurtenances to such land, as a result of a rainfall, not of an unprecedented nature. Under appellant's allegations of damages for a permanent injury to the land, he could recover damages for any character of an injury shown, whether permanent or otherwise. Under the statute above quoted, appellant's suit is one sounding in tort, and the same rule as to recovery in a personal injury suit in which the plaintiff alleges a permanent injury, which permits recovery of damages for a lesser injury, applies to suits under this statute, and it was error for the court to restrict the right of recovery only to damages resulting from permanent injury to appellant's land.

■ Since the enactment of article 7589a, damages may be recovered for injury to land caused by the diversion of surface water from its natural flow, regardless of whether the artificial barrier used as a means to divert such water was negligently constructed or not, for, in such a suit, the controlling questions to be determined are: (a) Was the surface water diverted from its natural flow by artificial means? and (b) Did such diversion cause the damages to the owner of the land, over which the diverted water was caused to flow or accumulate, and which damages would not have resulted to the owner of the upper land but for such diversion? In the instant case, the evidence raised the issues, both as to the diversion of the surface water on to appellant's land, and as to his land being damaged thereby.

■ As shown by the special issues, above quoted, the trial court tried this case under the common-law rule, above announced, and did not try it under the provisions of article 7589a. This was error and, as the jury found, in answer to special issue No. 1 that appellant's land was damaged by the rainfall of May, 1929, by the flow of surface water thereon, and, as the evidence raised the issue as to whether this damage was caused by the maintenance of the terraces constructed by appellee, this erroneous submission was prejudicial to appellant, and requires a reversal of this case.

Basing a reversal of this case on the error of the court, in not applying the provisions of article 7589a, in the trial of this case, we find it unnecessary to pass on the assignments of error in reference to the alleged improper arguments of appellee's counsel, and in reference to the conduct of the court, in admonishing one of appellee's counsel, as there will not likely be a repetition of these alleged errors in another trial of the case.

■ Other assignments of error are presented in the brief, but as the subject-matter of such assignments was not raised in the motion for a new trial, nor called to the attention of the trial court, we cannot pass upon them. Article 2232 R. C. S.; Universal Life & Acc. Ins. Co. v. Armstrong (Tex. Civ. App.) 63 S.W.(2d) 225; Houston Belt & Term. Ry. Co. v. Daidone (Tex. Civ. App.) 62 S.W. (2d) 524; Commercial Cas. Ins. Co. v. Hamrick (Tex. Civ. App.) 60 S.W.(2d) 247. All other assignments not herein discussed have been considered, with the result that we find they do not show reversible error.

It necessarily follows that, in our opinion, this case must be reversed and remanded for a new trial, consistent with the views herein expressed.

Reversed and remanded.